682 So.2d 847 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
George Rogers FORD, Defendant-Appellant.
No. 28724-KA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1996.
*848 Charles Kincade, Monroe, for Defendant-Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, H. Stephens Winters, Assistant District Attorney, for Plaintiff-Appellee.
Before NORRIS, BROWN and CARAWAY, JJ.
NORRIS, Judge.
The defendant, George Rogers Ford, was charged with Aggravated Burglary in violation of La. R.S. 14:60. At trial in September 1995, a jury unanimously found Ford guilty as charged. The District Court subsequently sentenced him to 15 years at hard labor with credit for time served. From this conviction and sentence he now appeals, advancing four assignments of error. For reasons expressed herein, we affirm.

Factual and Procedural History
On November 18, 1994, at approximately 11:15 p.m., Fonda Knowles woke up when she heard a knock at the front door of her Monroe apartment. Knowles's husband, Roscoe ("Rock"), had recently left for work and she was in the apartment alone. She looked through the peep hole and saw a black female. She asked who it was and the female said "Nook-Nook" or "Nee-Nee." The female, whom Knowles identified in court to be Anita White, asked if Rock was home. Thinking that White knew her husband, Knowles opened the door and White said that Rock owed her ten dollars for taking him to work the previous week. Knowles had been out of town the previous week, so *849 she assumed White had given Rock a ride to work. Knowles said she only had a twenty-dollar bill and no change; a neighbor also had no change. White then asked Knowles to let her take the twenty to the store, get change and bring her back ten dollars. Knowles agreed and White left.
About 30 minutes later, there was another knock on Knowles's front door. Apprehensive because of previous events, Knowles got a steak knife from the kitchen and went to the door. She looked through the peep hole and only saw White. Knowles opened the door just a crack and requested her change. Two men appeared; White introduced them as relatives and asked if they could enter the apartment. When Knowles told them no, she went to close the door and the three people rushed the door, knocking Knowles to the floor. One of the men was the defendant, Ford.
Ford began beating Knowles in the head; she started screaming and stabbed him with the steak knife. Ford dragged Knowles by her hair towards the bathroom, but she was able to resist. During the struggle, the knife fell out of her hands and defendant grabbed for it. Knowles elbowed him away and got the knife. Meanwhile, White took Knowles's purse which contained cash and rings that belonged to Knowles. Eventually the three assailants left the apartment.
Ford was arrested and charged by bill of information with aggravated burglary, in violation of La. R.S. 14:60. Shortly after the arrest, Ford was explained his constitutional rights, signed a waiver of rights form and gave an oral statement to the police. Ford stated that he and the other two assailants, one of whom he identified as "Bullet" (later determined to be Allen Dunaway), were smoking crack cocaine prior to the incident and that they went to the victim's apartment in an attempt to get some money. He also stated that they went to the victim's apartment the second time planning to take her purse.
At the trial, White and Dunaway both testified that Ford was involved in the planning and execution of the charged crime. Ford also testified at trial, but denied any intent to rob Knowles or knowledge that White or Dunaway intended to do so. He further testified that he only hit Knowles in self-defense.
After a jury trial, he was found guilty as charged, and the trial judge sentenced him to 15 years at hard labor with credit for time served.

Discussion: Sufficiency of Evidence
In his first assignment, Ford contests the sufficiency of the evidence. Specifically, he argues that the evidence did not establish that he had the intent to commit a felony or theft before entering the apartment. Consequently, he claims that the verdict rendered by the jury was contrary to the law and the evidence.
When the defendant challenges both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Huff, 27, 212 (La.App.2d Cir. 8/23/95), 660 So.2d 529. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 43, 101 S.Ct. 970, 972, 67 L.Ed.2d 30 (1981). The appellate review standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Washington, 597 So.2d 1084 (La.App. 2d Cir.1992). An appellant court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817 (La. 1987); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988). A credibility call among witnesses is fully within the jury's province. State v. Trosclair, 443 So.2d 1098 (La.1983). Thus, in the absence of internal contradiction *850 or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992).
Aggravated burglary is defined in pertinent part as the unauthorized entering of any inhabited dwelling with the intent to commit a felony or any theft therein, if the offender commits a battery upon any person while in such place, or in entering or leaving such place. La. R.S. 14:60.
Based on the evidence presented at trial, any rational juror could have found Ford guilty of aggravated burglary. The evidence viewed in the light most favorable to the state showed that he and two accomplices planned the burglary of the Knowles apartment. At trial, Anita White testified that according to the common plan, she was supposed to go in and get the purse, while Ford was to tie up Mrs. Knowles and stuff her mouth with something to keep her from screaming. Also, Allen Dunaway testified that before going to the apartment, he, White and Ford discussed what each person would do. Dunaway corroborated White's account of Ford's role in the burglary. Dunaway, White and Knowles testified that Ford went into the apartment without consent and struck Knowles.
Furthermore, Detective Blunschi of the Ouachita Parish Sheriff's office testified that he took a statement from Ford shortly after the commission of the crime.[1] In the statement, Ford admitted taking part in the burglary and told the detective that according to their plan, White was to distract Mrs. Knowles and the men were to take her "stuff." R.p. 253-254. With Ford's trial testimony thus discredited, the evidence is sufficient to convict Ford of aggravated burglary. Ford took part in a pre-conceived plan to make an unauthorized entry into the victim's apartment and take her property, and committed a battery upon Knowles after entering the apartment.
While Ford gave a different version of the events at trial and specifically advocated a self-defense theory, the jury obviously dismissed his testimony as incredible; we will not disturb this credibility call. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Braswell, supra. We are unable to say that the jury was clearly wrong in its evaluation of the witnesses' credibility, specifically to reject Ford's trial testimony and accept the rest. The evidence is sufficient under Jackson v. Virginia, supra. This assignment lacks merit.

Excessive Sentence
By his next two assignments, Ford argues that the trial court erred in imposing an excessive sentence. Ford also contends that the court did not give adequate consideration to certain mitigating factors. At the sentencing hearing, the defendant received 15 years at hard labor with benefit for time served. Defendant filed a motion to reconsider which was denied by the trial court.
Before imposing the sentence, the court reviewed a pre-sentence investigation ("PSI") which detailed Ford's criminal history. The court observed that Ford had a criminal history dating back to 1965 with a guilty plea to unauthorized use of a movable, reduced from theft; a 1966 conviction for simple burglary; a 1970 guilty plea to assault with intent to commit robbery, reduced from attempted robbery; and a 1973 guilty plea to attempted simple robbery, reduced from armed robbery; and after completing his 2½ years at hard labor for the last felony, he had led a relatively crime free life until the instant offense. The court further considered the fact that Ford was married and prior to the present offense was gainfully employed, demonstrating a good work ethic.
Whether the sentence is too severe depends on the facts of the case and the background of the defendant. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment *851 are considered in light of the harm done to society, it shocks the sense of justice. State v. Marshall, 94-0461 (La.9/5/95), 660 So.2d 819; State v. Strange, 28,466 (La.App.2d Cir. 6/26/96), 677 So.2d 587.
A trial court has wide discretion to sentence within the statutory limits and absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La. 1983); State v. Thompson, 25,583 (La.App.2d Cir. 1/19/94), 631 So.2d 555. The trial court is not required to give particular weight to mitigating or aggravating circumstances in its decision. The record must only show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The goal of Article 894.1 is the articulation of the factual basis for the sentence impose. State v. Gene, 587 So.2d 18 (La.App. 2d Cir.1991).
At the sentencing hearing, the trial judge stated that because of Ford's prior felonies, he was not eligible for a suspended sentence or probation. The record shows that this was a particularly violent crime where the victim was struck numerous times about the head. The court also noted that the victim continues to suffer physically and emotionally from defendant's actions. The court specifically mentioned Ford's relatively long crime-free period, his work ethic and family obligations, but obviously felt those did not offset the need for a significant sentence. The court stated that a lessor sentence would deprecate the seriousness of the crime.
The record shows that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. Ford faced a maximum hard labor sentence of 30 years, La. R.S. 14:60, and the sentence imposed was only half of that allowed. On this record, we cannot say that the District Court abused its broad discretion in imposing this sentence. The penalty is not inappropriate for this healthy adult with a past criminal history and does not shock our sense of justice. The sentence is not constitutionally excessive.
These assignments of error lack merit.

Error Patent Review
By his final assignment of error, Ford request a review of the record for errors patent. This request is unnecessary since such review is made automatically in all criminal cases. State v. Stamper, 615 So.2d 1359 (La.App. 2d Cir.), modified on other grounds, 624 So.2d 1208 (La.1993). We have reviewed the record and find nothing we consider to be error patent.[2]

Conclusion
All of the assignments of error lack merit. For the reasons expressed, Ford's conviction and sentence are AFFIRMED.
NOTES
[1] The trial court determined the statement to be free and voluntary, and defendant does not contest this finding or the admission of the statement.
[2] A notice of the prescriptive period for post-conviction relief pursuant to La.C.Cr.P. art 930.8 is found in the record and signed by the defendant. This notice supersedes any error or defect which the court may have made in orally informing the defendant of such deadlines.