PEATROSS, J.
[ defendant, D.M.[1], was charged with aggravated incest. After being found competent to stand trial, Defendant was convicted as charged in a bench trial and was sentenced to ten years at hard labor, with credit for time served. Defendant now appeals. For the reasons stated herein, Defendant’s conviction and sentence are affirmed.

FACTS

An investigator for the DeSoto Parish Office of Child Protective Services (“OCS”), Janet Arnold, received a report alleging that Defendant was molesting his grandchildren. Defendant was in his mid-50s and had been diagnosed with and was being treated for paranoid schizophrenia. He lived with his daughter, who is also the mother of the victim in this case.[2] Ms. Arnold went to the home to talk to her and her two children, B.M. and B.M.’s sister. B.M. was a 14-year-old boy with Asper-ger’s Syndrome, a form of autism, who was in special education classes at school. During her interview with B.M., he denied that Defendant had ever tried to have sex with him, but stated that he did not know what oral sex meant. Ms. Arnold testified that, after she explained oral sex to B.M., he quickly responded that he and Defendant did that when Defendant would take him for walks in the woods. B.M. told Ms. Arnold that Defendant would ask him to pull down his pants and then Defendant would perform oral sex on him. B.M. told |2Ms. Arnold that this had occurred three times, and after each time, Defendant would take him to a nearby store for cigarettes or candy.
Ms. Arnold further testified that, during this initial interview, the mother indicated to her that she was aware of a prior allegation that Defendant had molested B.M.’s sister, but that she had no knowledge of Defendant molesting B.M. Ms. Arnold informed her supervisor, removed the children from the home and contacted DeSoto Parish Sheriffs Office.
Adam Ewing, an investigator for the DeSoto Parish Sheriffs Office, conducted an investigation after being contacted by *81 Ms. Arnold. Officer Ewing testified that B.M. told him about the walks in the woods where Defendant would put his mouth “between his legs” and then take him to the Big Bass Grocery Store for candy. Officer Ewing explained that the neighborhood where they lived was surrounded by woods and that the Big Bass Grocery Store was around the corner from the home. Officer Ewing further testified that B.M. told him that Defendant would pick up leaves from the ground, roll them in notebook paper and let him smoke it.
Officer Ewing testified that B.M. was very uncomfortable discussing this and it was a difficult interview due to B.M.’s mental and emotional problems, but he did not believe anyone had prompted B.M. to make the allegations or that his statement appeared to be rehearsed. Officer Ewing testified that he did not know of a reason for B.M. to make up such an allegation and that he did not think B.M. could understand how he might gain from doing so.
IsRegarding the mother, Officer Ewing testified that the mother was aware of a past allegation that Defendant had molested B.M.’s sister but that she told him that she was not concerned about Defendant living in the home with them because there was no proof of those allegations. Officer Ewing also testified that the mother wanted to delay the investigation until she could arrange for Defendant’s disability check to come directly to her.
It was Officer Ewing’s belief that the report to OCS originated from a social worker who worked with Defendant while he was in the mental health unit of the VA hospital. Officer Ewing testified that he did not think that the mother induced B.M. to make false allegations because she did not want law enforcement or OCS involved in her family and that there was no evidence that she wanted to “get rid of Defendant.”
Officer Ewing also interviewed Defendant, during which Defendant told him about the walks in the woods and the trips to the Big Bass Grocery Store. Defendant, however, denied any sexual contact between himself and B.M. According to Officer Ewing, Defendant explained that B.M. would get rowdy after eating candy and that he would have to wrestle him to the floor. Defendant also stated that B.M. pulled out his penis one time and asked Defendant to “suck it,” but that he did not do it. Defendant told Officer Ewing that he did not tell his daughter about this incident because he did not want to get B.M. in trouble. Defendant also told Officer Ewing that allegations regarding B.M.’s sister when she was two years old stemmed from her walking up to him naked, pulling down his pants and'climbing onto his lap. Defendant told Officer Ewing that he put her on the |4floor and told her not to do that. Defendant also told Officer Ewing that he had schizophrenia and had been taking medication for it for years.
B.M. testified that his grandfather, Defendant, had touched his private parts with his hand and mouth when they were in the woods and that he had done this three times. B.M. also testified that his mother did not tell him to say these things about his grandfather.
The mother testified that Defendant had gotten in trouble in Colorado for stabbing a security guard and that he had not been taking medication for his schizophrenia at the time. As a condition of his probation, which was transferred to Louisiana for supervision, Defendant was to live with his daughter while on probation, take his medication and seek mental health therapy. The mother testified that Defendant came to live with her in late August 2004, but that he did not take his medication regularly or seek therapy.
*82 The mother testified that she learned of the allegations regarding B.M. during December 2004, when Defendant had been committed to the mental health unit of the VA Hospital. She further testified that, when Defendant did not take his medication, he would talk to people who were not there and that he had to be committed because he was not taking his medication. While Defendant was in the hospital, the mother found a note written by B.M., wherein he stated that he wanted to sue Defendant or have him put in jail. The mother testified that she had also read something in Defendant’s journal that made her feel uncomfortable, so she asked both B.M. and his sister if Defendant had been touching them or playing with|Bthem. B.M. said no, but the mother testified that she could tell that he was lying. She explained that she had had problems with B.M. “playing with himself’ and that B.M. told her that his penis had been hurting, that he showed it to Defendant and that the Defendant rubbed it to make it feel better. The mother testified that she called OCS because B.M. told the same story to his grandmother.
The mother testified that she did not need Defendant to live with her in order to get money from his disability check because she had a job and her son and husband both received disability checks. Despite her testimony that she called OCS to report the inappropriate behavior allegations that her children had related to her, also testified that she did not believe B.M.’s story and that she believed that OCS gave him the idea. The mother testified that B.M. has a low I.Q., that he was very impressionable and that he was susceptible to repeating something he was told to say. The mother testified that he might have been motivated to make up these allegations because he wanted to live with his grandmother, with whom he had lived until age 11. Finally, the mother also testified that B.M. was a compulsive liar and that B.M. had gotten in trouble in the past for masturbating and for talking about sex at school and on the school bus.
The State also presented the testimony of Marsha McCall, the supervisor of investigations for the DeSoto Parish OCS. Ms. McCall testified that the agency had received other complaints regarding the household, but that the mother had never been the one to call and report a problem. Rather, Ms. McCall testified that the reports were made by people | ¿who had been professionally mandated to report suspected problems. Ms. McCall testified that they received a report that siblings in the household were engaging in sexual acts initiated by B.M. and that the investigation was begun to see whether the mother was properly supervising the children; Ms. McCall testified that OCS does not investigate sibling-on-sibling sexual activity specifically, but that it does investigate to see whether the siblings are properly supervised. Ms. McCall further testified that it was during this investigation that OCS learned that Defendant was sexually abusing B.M. According to Ms. McCall, the mother never filed a complaint, but she had mentioned to Ms. Arnold that there were some problems with Defendant and the children.
As previously stated, Defendant was found competent to stand trial; and, based upon the evidence presented at the bench trial, the trial court found Defendant guilty of aggravated incest and subsequently imposed a sentence of ten years at hard labor with credit for time served. This appeal ensued.

DISCUSSION

Assignment of Error Number One (verbatim): The State failed to present sufficient evidence to support the verdict, a conviction of aggravated incest.
The reason for reviewing sufficiency first is that the accused may be *83 entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, reviewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have|7been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra. The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Owens, 30,-903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747. In the absence of internal contradictions or irreconcilable conflict with physical evidence, the testimony of one witness is sufficient support for a requisite factual conclusion if that witness is believed by the trier of fact. State v. Jones, 31,613 (La.App.2d Cir.4/1/99), 733 So.2d 127, writ denied, 99-1185 (La.10/1/99), 748 So.2d 434, citing State v. Ford, 28,724 (La.App.2d Cir.10/30/96), 682 So.2d 847, writ denied, 99-0210 (La.5/14/99), 745 So.2d 12.
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. Where there is conflicting testimony about factual matters, the resolution of which depends upon a ^determination of the credibility of witnesses, the matter is one of the weight, not the sufficiency, of the evidence. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). A reviewing court accords great deference to a judge or jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
Defendant argues that the State failed to present sufficient evidence to support the verdict of aggravated incest because it was based on the testimony of the child victim and no physical evidence. Defendant argues that the child’s story was inconsistent and that the child lacks credibility. He also asserts that there was no evidence of specific intent offered. We are not persuaded by Defendant’s arguments.
According to La. R.S. 14:78.1, the offense of aggravated incest is defined as follows:
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
B. The following are prohibited acts under this Section:
(1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behav *84 ior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in |flsexual activity constituting a crime under the laws of this state.
(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desire of either the child, the offender, or both.
In the case sub judice, the State presented evidence that Defendant was B.M.’s grandfather and that B.M. was 14 years old at the time of the offense. Although the trial court did not specifically state which specific act under Subsection B that it found Defendant to have committed with B.M., the alleged act of performing oral sex on a 14-year-old by a 57-year-old man would satisfy the elemental requirements of sexual battery (La. R.S. 14:43.1), felony carnal knowledge of a juvenile (La. R.S. 14:80), indecent behavior with a juvenile (La. R.S. 14:81) and molestation of a juvenile (La. R.S. 14:81.2). Further, it would meet the requirements of La. R.S. 14:78.1(B)(2) as lewd touching done with the intent to arouse or satisfy the sexual desires of either the child or offender. Accordingly, we conclude that the State presented evidence from which a reasonable fact finder could determine that Defendant had committed each of the necessary elements of aggravated incest.
In regard to Defendant’s argument that the State failed to present evidence of Defendant’s specific intent, we note that aggravated incest is not a specific intent crime because the statute does not require the state to prove that the perpetrator intentionally engaged in the prohibited acts listed in Subsection B. Further, many of the underlying offenses listed in Subsection (B)(1) are not specific offense crimes. Of those underlying offenses in Subsection (B)(1) mentioned above as potential offenses for |inwhich Defendant’s alleged actions qualify, only sexual battery is a specific intent offense. The state is also not required to prove specific intent when proving that the defendant committed the prohibited actions described in Subsection (B)(2). Accordingly, Defendant’s assertion that the State’s alleged failure to present evidence of specific intent somehow constitutes reversible error is without merit.
In addition, Defendant emphasizes that the State’s evidence was primarily from the testimony of the child, B.M., who, according to Defendant, lacks credibility. Defendant argues that such evidence is insufficient on which to base a conviction. We disagree. While Defendant alleges that there were inconsistencies in B.M.’s testimony, he fails to allege what those inconsistencies were. As noted above, in the absence of internal contradictions or irreconcilable conflict with physical evidence, the testimony of one witness is sufficient support for a requisite factual conclusion if that witness is believed by the trier of fact. State v. Jones, supra. The appellate court does not substitute its own appreciation of the evidence for that of the fact finder, nor does it assess the credibility of witnesses or reweigh the evidence. State v. Robertson, supra; State v. Smith, supra. Further, this court has previously found that the testimony of a sexual assault victim alone is sufficient to convict a defendant. State v. Burnham, 41,146 (La.App.2d Cir.10/11/06), 942 So.2d 571, citing State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 00-2726 (La.10/12/01), 799 So.2d 490; State v. Robinson, 36,147 (La.App.2d Cir.12/11/02), 833 So.2d 1207. The lack of physical evidence Indoes not negate the sufficiency of the evidence because “[s]uch testimony alone is sufficient even where *85 the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant.” State v. Burnham, supra, citing State v. Ponsell, supra.
This assignment of error is without merit.
Assignment of Error Number Two (verbatim): The Court erred by imposing an excessive sentence of ten years at hard labor upon this Defendant.
Defendant argues that his sentence of ten years at hard labor is excessive because the goals of punishment and rehabilitation can be best accomplished with a less severe sentence. Defendant also argues that the trial court failed to provide a factual basis for the sentence imposed. In addition, in his motion to reconsider sentence, Defendant argued that it was cruel and unusual to sentence a 57-year-old man with mental health problems, such as schizophrenia, to ten years’ imprisonment.
We note that Defendant did not argue in the motion to reconsider sentence that the trial court failed to provide a factual basis to justify the ten-year sentence. According to La. C. Cr. P. art. 881.1(E), a defendant must raise a specific ground in the motion to reconsider sentence, and the failure to do so precludes the defendant from presenting sentencing arguments to the court of appeal which were not presented to the trial court. In such a circumstance, the defendant is simply relegated to having the appellate court consider the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Masters, 37,967 (La.App.2d Cir.12/17/03), 862 So.2d 1121; State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164. Accordingly, because Defendant did not 112argue in the motion to reconsider sentence that the trial court failed to give a factual basis for the sentence imposed, the appellate court is precluded from considering the issue on appeal. Thus, Defendant is relegated to a claim of constitutional excessiveness on appeal.
In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art 894.1. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not a rigid or mechanical compliance with its provisions. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App.2d Cir.4/22/04), 873 So.2d 747, writ denied, 04-2606 (La.6/24/05), 904 So.2d 728.
Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence | ^violates La. Const, art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d *86 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,-111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385. The trial court shall exercise its sentencing discretion to impose sentences according to the individualized circumstances of the offense and the offender. State v. Rogers, 405 So.2d 829 (La.1981). The trial court has broad discretion to sentence within the statutory limits, and the appellate court will not set aside a sentence as excessive absent a showing of manifest abuse of discretion. State v. Hardy, 39,-233 (La.App.2d Cir.1/26/05), 892 So.2d 710.
According to La. R.S. 14:78.1(D), the sentencing range for aggravated incest is imprisonment “with or without hard labor, for a term not less than five years nor more than twenty years.” Notably, a sentence of 10 years falls within the low to medium range of the prison term that could have been imposed. Further, had the State sought to sentence Defendant as a habitual offender, he could have been eligible for a prison term between 10 and 40 years. At the sentencing hearing, the trial court stated that it 114noted that Defendant was a second-felony offender, that it had considered the information in the pre-sentence investigation, that it had noted the sentencing guidelines and that it had noted the aggravating and mitigating circumstances. The pre-sentence investigation showed that Defendant was on probation from Colorado for felony menacing at the time he committed the present offense of aggravated incest. The pre-sen-tence investigation indicated that Defendant was on disability for mental health problems and that he reported suffering from paranoid schizophrenia. His pre-sen-tence investigation included a mental health evaluation performed by the Colorado Mental Health Institute, wherein it found that he had a psychotic disorder and that he had a history of being non-compliant with treatment.
Given that Defendant committed the present crime while on probation for another felony offense, we find that there would be an undue risk of Defendant committing another crime during a period of suspended sentence or probation. In light of Defendant’s resistance to mental health treatment, we agree with the trial court that Defendant is in need of correctional treatment in a custodial environment. Further, due to the serious nature of the crime, we conclude that a lesser sentence would deprecate the severity of the crime. The nature of the crime showed that Defendant manifested deliberate cruelty to the victim, that he knew the victim was particularly vulnerable due to his youth and mental disabilities, that he used his position as the victim’s grandfather to facilitate the offense and that he committed this offense on more than one occasion. Significantly, Defendant showed no remorse for his actions and, rather, only insists that there is no evidence | ^against him. Our review of the record and pre-sentence investigation shows that the trial court was cognizant of the sentencing considerations of La. C. Cr. P. art. 894.1.
The sentence of ten years is not grossly disproportionate to the seriousness of the offense, nor does it constitute needless infliction of pain and suffering. In light of the circumstances of this offense, the trial court did not abuse its discretion, and the ten-year sentence is not constitutionally *87 excessive. This assignment is, therefore, without merit.

CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant, D.M., are affirmed.
AFFIRMED.

. To protect the minor victim's identity, initials are used rather than full names. There are other individuals involved in this matter also with the initials including the victim’s mother, who is also Defendant's daughter, and the victim's sister. For clarity, the defendant will hereinafter be referred to only as "Defendant,” the victim's mother will be referred to as "the mother” and the victim’s sister will be referred to as "B.M.’s sister.”

. At the time of the trial of this matter, the mother was incarcerated pursuant to a plea bargain on the charge of accessory after the fact to aggravated incest surrounding the same incidents involved herein.