# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-61


**STATE OF LOUISIANA**

**VERSUS**

**JULIUS JAMAL GARNETT**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 321,112
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**PHYLLIS M. KEATY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Phyllis M. Keaty, D. Kent Savoie, and Van H. Kyzar, Judges.


**CONVICTION AND SENTENCE AFFIRMED.**
**MOTION TO WITHDRAW GRANTED.**

**Edward K. Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, Louisiana  70602-1641**
**(337) 491-0570**
**Counsel for Defendant/Appellant:**
**Julius Jamal Garnett**

**Jeffrey M. "Jeff" Landry**
**Louisiana Attorney General**
**Colin Clark**
**Assistant Solicitor General &**
**Chief of Criminal Appellate Section**
**Louisiana Department of Justice**
**Post Office Box 94005**
**Baton Rouge, Louisiana  70804-9005**
**(225) 326-6200**
**Counsel for Appellee:**
**State of Louisiana**

**Phillip Terrell, Jr.**
**District Attorney**
**Michael Shannon**
**Assistant District Attorney**
**Post Office Box 7358**
**Alexandria, Louisiana  71306-7358**
**(318) 473-6650**
**Counsel for Appellee:**
**State of Louisiana**

**Julius Jamal Garnett**
**In Proper Person**
**130053, Hickory-1**
**Louisiana State Penitentiary**
**17544 Tunica Trace**
**Angola, Louisiana  70712**
**Defendant/Appellant**

**KEATY, Judge.**

Defendant, Julius Jamal Garnett, appeals his conviction and sentence for first degree murder. For the following reasons, Defendant's conviction and sentence are affirmed, and appellate counsel's motion to withdraw is granted.

### FACTS AND PROCEDURAL BACKGROUND

On May 9, 2014, Pamela Carnahan was found dead in her apartment located in Alexandria, Louisiana. She died from stab wounds, and items found at the scene of the crime contained Defendant's DNA. On September 25, 2014, Defendant was indicted for first degree murder, a violation of La.R.S. 14:30. Following a jury trial, a mistrial was declared on March 17, 2016. Thereafter, another jury was selected, and a second trial commenced. On July 14, 2016, Defendant was found guilty as charged by an eleven to one vote. On July 22, 2016, Defendant's motion for post-verdict judgment of acquittal was denied in open court. Defendant waived sentencing delays, and the trial court sentenced him to life imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence.

Appellate counsel has filed a motion and supporting brief, seeking to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), alleging that there are no non-frivolous issues for this court to review. Additionally, Defendant has filed a pro se brief on appeal, asserting the following two errors.

(1)  The evidence presented in this case is insufficient to sustain [Defendant's] conviction.

(2)  The jury's verdict was not unanimous as required by Article I, §§ 2, 3, and 17(A) of the Louisiana Constitution of 1974, La. C.Cr.P. art. 782, and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

DISCUSSION

## I. Errors Patent

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

## II. Pro Se Assignment of Error Number 1

In his first pro se assignment of error, Defendant contends that the evidence adduced against him at trial was circumstantial and insufficient to support his conviction. Defendant questions whether the State presented sufficient evidence to prove any underlying felony such that the homicide was first degree murder rather than second degree murder.

When the sufficiency of evidence claim is raised on appeal, this court in *State v. Kennerson,* 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371, discussed the following inquiry to be used by the reviewing court:

> [T]he critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

In *State v. Hamilton*, 03-1385, pp. 13-14 (La.App. 3 Cir. 3/3/04), 867 So.2d 151, 160, *writ denied*, 04-1227 (La. 4/22/05), 899 So.2d 567, this court explained:

> Further, when the conviction is based upon circumstantial evidence, La.R.S. 15:438 provides that such evidence must exclude

every reasonable hypothesis of innocence. *State v. Camp*, 446 So.2d 1207 (La.1984); *State v. Wright*, 445 So.2d 1198 (La.1984). However, La.R.S. 15:438 does not establish a stricter standard of review on appeal than the rational juror's reasonable doubt standard. The statute serves as a guide for the jury when considering circumstantial evidence.

Additionally, the supreme court in *State v. Neal*, 00-674, p. 11 (La. 6/29/01), 796 So.2d 649, 658, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323 (2002), noted:

> As a general matter, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. *State v. Smith*, 430 So.2d 31, 45 (La.1983); *State v. Brady*, 414 So.2d 364, 365 (La.1982); *State v. Long*, 408 So.2d 1221, 1227 (La.1982). However, positive identification by only one witness is sufficient to support a conviction. *See State v. Mussall*, 523 So.2d 1305, 1311 (La.1988) (generally, one witness's positive identification is sufficient to support the conviction); *State v. Ford*, 28,724 (La.App. 2d Cir. 10/30/96), 682 So.2d 847, 849-50, *writ denied*, 99-0210 (La. 5/14/99), 745 So.2d 12. . . . The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may impinge on the "fact finder's discretion only to the extent necessary to guarantee the fundamental due process of law." *Mussall*, 523 So.2d at 1310 (La.1988).

At the time of the instant offense, first degree murder under La.R.S. 14:30 was defined as a homicide committed with specific intent during the commission of other listed felonies, including attempted aggravated rape, aggravated burglary, and armed robbery. Armed robbery under La.R.S. 14:64(A) was defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." Aggravated burglary is defined in La.R.S. 14:60, which states in pertinent part:

> Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, . . . where a person is present, with the intent to commit a felony or any theft therein, if the offender,
>
> (1) Is armed with a dangerous weapon; or
>
> (2) After entering arms himself with a dangerous weapon; or

3

(3) Commits a battery upon any person while in such place, or in entering or leaving such place.

Aggravated rape under La.R.S. 14:42 was defined, in pertinent part, as follows:

A. Aggravated rape is a rape committed . . . where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.

. . . .

(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.

An attempt under La.R.S. 14:27(A) was defined, in pertinent part, as follows:

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

Karen Frazier, Pamela's sister-in-law, testified on the State's behalf. Frazier advised that she was the sister of Pamela's husband, Daniel Carnahan. Frazier revealed that on the afternoon in question, she received a phone call from Jim Saints, the bus driver for Daniel and Pamela's daughter, who said that Pamela was not at the bus stop to pick up the child. Frazier revealed that she, along with her parents, met Saints at another location and retrieved the child. This was confirmed by Saints at trial. Frazier, her parents, and the child subsequently proceeded to Daniel and Pamela's apartment, which was located at the Chateau Deville Apartments. She advised that upon arrival, they knocked on the door; however, no one answered. At that point, Frazier went home, while her parents kept the child until Daniel was able to leave his job.

4

Frazier's testimony was confirmed by her and Daniel's father, Winston Carnahan, who also testified on the State's behalf. Winston revealed that "we" went to Daniel's second job to retrieve a key to the apartment. He advised that Daniel "started to give me the key," then decided to leave work early and return to the apartment with them. Winston advised that when they returned to the apartment, Daniel unlocked the door, went inside, and discovered Pamela's body. Winston said they subsequently called 9-1-1.

Daniel, who testified on the State's behalf, revealed that he, Pamela, and their daughter lived in Apartment 404 at Chateau Deville Apartments. Daniel testified that on the morning in question, he brought Pamela and their child to the bus stop and then proceeded to his first job at Pineville High School, where he worked as a custodian. Daniel testified that he tried calling Pamela multiple times throughout the day; however, she never answered the phone. Daniel noted that he worked until approximately 4:00 p.m., at which point he left the high school and proceeded to his second job. According to his testimony, it was during his second job when his parents "came over" and advised that Pamela failed to pick up their child at the bus stop. Daniel revealed that he subsequently returned to his apartment, unlocked the door, walked in, and discovered Pamela's body. Additional evidence admitted at trial by the State confirmed Daniel's whereabouts on the day in question.

According to the trial testimony of Officer Cherie Silas, she arrived at the crime scene located at Apartment 404 of the Chateau Deville Apartments around 5:40 p.m. Prior to entering the apartment, "in front of the door, [she] could see blood prints and drops." Upon entering the apartment, Officer Silas walked down the hall where she saw "blood prints" and eventually located "the victim on the floor in a pool of blood." Officer Silas secured the scene and waited for the crime scene detective.

5

Detective Wade Bourgeois, who testified on the State's behalf, was present at the crime scene. He revealed that an empty Atlas-brand condom wrapper and "a broken piece of a knife handle" were located near Pamela's body. He also testified that Pamela's body contained multiple stab wounds. He advised that the condom wrapper and knife were collected as evidence. The record before us shows that the items were submitted into evidence at trial. Detective Bourgeois indicated that a search warrant was executed for Defendant's Apartment 410, also located in the Chateau Deville Apartments. Detective Bourgeois revealed that Pamela's apartment keys and wallet were missing.

Lieutenant William Bates, who testified on the State's behalf, revealed that bloody footprints at the crime scene were in the shape of Air Force Ones, which is a type of shoe. A picture of a partial shoe print was submitted into evidence at trial. Photographs of Pamela and crime scene were also submitted into evidence, which Lieutenant Bates described as follows: "Her left leg is folded back next to her side. . . . there's a . . . torn condom wrapper in between her legs on the floor" along with "a portion of the broken knife handle." He advised that the torn condom wrapper was empty as it contained no condom. According to Lieutenant Bates, a search of Pamela's apartment failed to reveal the presence of a condom or other condom wrappers. He testified that when Pamela's body was moved, "a couple more smaller pieces of the knife handle" along with a piece of a blue latex glove were exposed. He advised that the condom wrapper, pieces of the broken knife handle, and latex glove were collected as evidence and sent to the crime lab for analysis. Lieutenant Bates noted that he was present during Pamela's autopsy. He indicated that during the autopsy, a bite mark on Pamela's left hand was discovered. Lieutenant Bates testified that he swabbed the bite mark for DNA and sent it to the crime lab.

The State's expert in forensic DNA analysis, Dr. Candace Jones, testified that she worked for the crime lab where she performed DNA analyses of the condom wrapper, knife handle, latex glove, bite mark, and other obtained evidence. Dr. Jones testified that her analysis of all of the evidence enabled her to generate DNA profiles from some of the items. According to her testimony, the condom wrapper revealed Pamela as the major contributor of DNA found on the condom wrapper along with two other minor contributors. Dr. Jones testified that the two minor contributors could not be identified; however, two persons of interest, Michael Fells and Don Mosley, were excluded as possible contributors. Similarly, the results of her examination of the latex glove and the knife handle revealed Pamela as major contributor of DNA found on the latex glove and excluded Mosely and Fells as minor contributors. Dr. Jones agreed that when a struggle occurs, DNA from the victim's blood can overcome the minor contributor's DNA on items.

Dr. Jones testified that she submitted the DNA results obtained from the minor contributors into CODIS, a national DNA database. According to her testimony, the database matched the swab obtained from the latex glove and the knife handle to Defendant. With respect to the condom wrapper, Dr. Jones explained that, "due to the complexity of the DNA profile obtained from the swab from the condom wrapper, no significant conclusion can be made regarding the inclusion or exclusion of [Defendant]." With respect to the bite mark, Dr. Jones performed a Y-chromosome test, which revealed a DNA paternal profile of Defendant or someone in his paternal line.

Lieutenant Bates testified that, after receiving the results of the DNA database information, a search warrant was executed for an apartment believed to be Defendant's residence. He agreed that the apartment was Number 410, with an address of 4015 Lakeside Drive. According to Lieutenant Bates, the search revealed

7

blue latex gloves, Atlas-brand condoms, Defendant's identification and other paperwork containing his name, and three different pairs of Air Force One shoes.

Vernechor Garnett, Defendant's sister, testified that the apartment that was searched actually belonged to her. Vernechor, one of two witnesses who testified on behalf of the defense, stated that although Defendant listed her apartment as his residence for probation and mail purposes, he did not live with her. She acknowledged that Defendant kept clothing at her apartment and "stayed there sometimes." Vernechor noted that she lived in her apartment with her three children and her older brother, Tavius Garnett, who was bipolar and schizophrenic. She also testified that although she did not have condoms, Tavius kept a supply in the apartment. She explained that she kept blue latex gloves in her apartment for cleaning purposes. Vernechor also revealed that she kept utensils at her apartment. The other witness who testified for the defense was Nedra Dotson, Tavius, Vernechor, and Defendant's mother. Nedra advised that Defendant did not have a twin brother. This information is important in light of Dr. Jones' testimony that DNA is "unique for every individual except identical twins."

Dr. Christopher Tape, the State's expert forensic pathologist who performed the autopsy, testified that Pamela sustained fourteen stab wounds to the face and neck. He opined that Pamela's death was homicide caused by stab wounds. Dr. Tape advised that there were no injuries to Pamela's genitals, but explained that "[y]ou can have injuries with consensual sex and no injuries with non-consensual sex and everything in between." He indicated the presence of a circular injury to Pamela's left hand that resembled a bite mark and would have been inflicted before she died. Dr. Tape was unsure as to whether the bite mark was a defensive wound.

Based on the above evidence and testimony, we conclude that it was reasonable for the jury to find that the State proved beyond a reasonable doubt that

8

Defendant was the person who killed Pamela. We also find that the jury reasonably believed that Defendant committed first degree murder based upon evidence showing that it occurred during Defendant's commission of other felonies, i.e., attempted aggravated rape, aggravated burglary, and/or armed robbery. According to the evidence and testimony presented at trial, Defendant could not be definitively excluded or included as one of the minor contributors of DNA found on the condom wrapper. However, DNA testing linked Defendant to the latex glove and knife handle, found in conjunction with the condom wrapper. It was, therefore, reasonable for the jury to conclude that the condom wrapper belonged to Defendant. The condom wrapper could be an indication that Defendant may have attempted some type of sex act. Although circumstantial evidence, the jury could have reasonably concluded that Defendant made an attempt of some type of sex act while armed with a dangerous weapon, i.e., the knife, and Pamela resisted to the utmost. Use of a weapon and the victim's resistance are factors that separately support aggravated rape pursuant to La.R.S. 14:42 as it existed at the time of the offense. The presence of the condom wrapper supports not only intent, but an act "tending directly toward the accomplishing" the crime as set forth in the attempt statute. La.R.S. 14:27(A). Additionally, testimony in the record revealed that Pamela's apartment keys and wallet were missing. This supports a finding that a theft of things of value had occurred; and if the Defendant was armed with a knife during the theft, it would be reasonable for the jury to conclude that Defendant was violating the armed robbery statute pursuant to La.R.S. 14:64(A). For similar reasons, the jury could have reasonably concluded that Defendant committed aggravated burglary as defined in La.R.S. 14:60.

Accordingly, Defendant's pro se assignment of error number one is without merit.

9

**III.  Pro Se Assignment of Error Number 2**

In his second pro se assignment of error, Defendant contends that the jury's verdict was not unanimous as required by Article I, Subsections 2, 3, and 17(A) of the Louisiana Constitution of 1974, La.Code Crim.P. art. 782, and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  The record before us indicates this issue was not raised in the trial court.  As such, it cannot be raised on appeal.  *State v. Hatton*, 07-2377 (La. 7/1/08), 985 So.2d 709.  Additionally, La.Code Crim.P. art. 782(A) provides, in pertinent part:  "Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict."  That particular statute was ruled constitutional in both *State v. Bertrand*, 08-2215, 08-2311 (La. 3/17/09), 6 So.3d 738 and *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628 (1972).

Accordingly, Defendant's pro se assignment of error number two is without merit.

**IV.  *Anders* Analysis**

Appellate counsel has filed a motion and supporting brief seeking to withdraw pursuant to *Anders*, 386 U.S. 738, alleging that there are no non-frivolous issues for this court to review.  The *Anders* analysis was explained in *State v. Benjamin*, 573 So.2d 528, 531 (La.App. 4 Cir. 1990), as follows:

> When appointed counsel has filed a brief indicating that no non-frivolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, *Anders* requires that counsel move to withdraw.  This motion will not be acted on until this court performs a thorough independent review of the record after providing the appellant an opportunity to file a brief in his or her own behalf.  This court's review of the record will consist of (1) a review of the bill of information or indictment to insure the defendant was properly charged; (2) a review of all minute entries to insure the defendant was present at all crucial stages of the proceedings, the jury composition and verdict were correct and the sentence is legal; (3) a

review of all pleadings in the record; (4) a review of the jury sheets; and (5) a review of all transcripts to determine if any ruling provides an arguable basis for appeal. Under C.Cr.P. art. 914.1(D) this Court will order that the appeal record be supplemented with pleadings, minute entries and transcripts when the record filed in this Court is not sufficient to perform this review.

In *State v. Sanders*, 16-470, p. 6 (La.App. 3 Cir. 12/7/16), 209 So.3d 143, 147-48 (alteration in original), *writ denied*, 17-218 (La. 11/6/17), 229 So.3d 470, this court further explained:

> While it is not necessary for Defendant's appellate counsel to "catalog tediously every meritless objection made at trial or by way of pre-trial motions with a labored explanation of why the objections all lack merit[,]" counsel's *Anders* brief must "'assure the court that the indigent defendant's constitutional rights have not been violated.' *McCoy* [*v. Court of Appeals of Wisconsin*, 486 U.S. [429] at 442, 108 S.Ct. [1895] at 1903, 100 L.Ed.2d 440 [ (1988) ]." *State v. Jyles*, 96-2669, p. 2 (La. 12/12/97), 704 So.2d 241, 241. Counsel must fully discuss and analyze the trial record and consider "whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the [trier of fact] for its consideration." *Id*. Thus, counsel's *Anders* brief must review the procedural history and the evidence presented at trial and provide "a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place." *State v. Mouton*, 95-981 (La. 4/28/95), 653 So.2d 1176, 1177.

In this case, appellate counsel states that he has found no non-frivolous issues to present for review. He addresses a single issue involving the State's use of a written report in place of video that could not be downloaded. Over Defendant's objection, the trial court allowed a detective to testify from said report. Counsel states that even if an error occurred, it would be harmless in light of the other evidence introduced. We find that this contention is correct, as the video evidence had no direct bearing on the crime. The video evidence involved the whereabouts of Pamela's husband. However, as already discussed, Defendant's identity as the killer was supported by the DNA evidence. Thus, the husband's location at the time of the killing was not a core issue bearing on the verdict.

Pursuant to *Anders*, 386 U.S. 738, and *Benjamin*, 537 So.2d 528, we have performed a thorough review of the record, including transcripts, pleadings, minute entries, the charging instrument, and Defendant's pro se claims. Defendant was properly charged in an indictment. He was present and represented by counsel in all crucial stages of the proceedings. As discussed earlier, his pro se claims lack merit.

Thus, we have found no non-frivolous issues that counsel should have presented for appeal. Accordingly, Defendant's conviction and sentence are affirmed, and counsel's motion to withdraw is granted.

**CONVICTION AND SENTENCE AFFIRMED.**
**MOTION TO WITHDRAW GRANTED.**