DREW, J.
LA unanimous jury convicted John Simpkins as charged of four crimes for which he was sentenced to life without benefits plus 40 years at hard labor:
• aggravated rape,[1] life at hard labor, without benefits;
*1024 • aggravated incest, 20 years at hard labor;
• molestation of a juvenile, 10 years at hard labor; and
• sexual battery, 10 years at hard labor.
The trial court ordered that all sentences be served consecutively.
He now appeals his four convictions. We vacate the aggravated rape conviction, enter a verdict of guilty of forcible rape, and remand this matter for sentencing for that crime.
We affirm the other three convictions.
We vacate the sexual battery sentence and remand that matter for resentencing, directing the trial court to note that any sentence for sexual battery must be served without benefits.
We vacate the illegally lenient sentence relative to molestation of a juvenile under 13 and remand that matter for resentenc-ing, directing the trial court to note that the applicable law for the five months before the victim became 13 required at that time a sentencing range from 25 years at hard labor to life without benefit of parole, probation, or suspension of sentence. At least 25 years of the sentence must be served without benefits.
|2We further remand all four matters to the trial court, for the required advice as to sex offender registration requirements.
FACTS
Defendant moved with his wife, SDS,[2] and their three children from Texas to Webster Parish in July or August of 2002. They previously had lived in Mississippi. The children in the home were:
• FRS, a girl (born May 11, 1990, thus already 12 years of age at the time of the move to Louisiana);
• JWS, a younger, mentally impaired boy; and
• SMS, a still-younger sister.
FRS is not the biological child of defendant; the other two children are. Defendant worked for a construction company; his wife was a waitress. Their trailer house was full of clutter, garbage, trash, and debris. The photos are worse than disturbing. All of them slept on the floor in the same bedroom.
This was not a normal household. Defendant bought lingerie for his wife and stepdaughter, and had them dance for him while wearing the garments. Several photos taken by the defendant show his wife and FRS wearing only underwear or lingerie. All three females in the home said that the defendant habitually walked around naked in front of them. He openly kept a collection of pornographic material and a variety of sex toys.
FRS testified that:
• the defendant began having sex with her when she was eight years old, while they were living in Mississippi;
1during the first act, the defendant choked her;
• from then on, the sex occurred regularly, at least once or twice a week;
• it usually happened when her father would come home early from work while her mother was away at work or was in the bathtub;
• the defendant made her have vaginal, anal, and oral sex with him many times;
• he continued to have sex with her after the family moved to Webster Parish;
• the intercourse occurred in Webster Parish before and after she turned 13; and
*1025 • he bought her prom dress and took her to her high school prom in 2007;[3] and
• the defendant had sex with her on the day the prom photo was taken.
She related one chilling incident that occurred in Webster Parish:
One day we [FRS and the defendant] were in the living room and we were having intercourse and my sister walked in the front door and she said, “I’m telling mama!” and she ran back there and [the defendant] looked at me and he said, “If she tells, I will strangle her.” And so I had to run before she got to the bathroom and stop her from telling my mom.
FRS also expressed fear of the defendant, explaining:
[H]e’s the type of person that would just, if he was mad at you he’d come up and smack you or he’d pick up something and throw it at you or he’d threaten to kill you if it was just you alone and you made him mad or he’d be like, well, you’re going to get it or something like that ... [T]here was the threat about strangling my sister and then there was times whenever he threatened to take my brother out in the yard and beat him like a full-grown man. And then me, he’d threaten to go take me where nobody could find me and bury me alive or he’d threaten to beat me ... [H]e told me that if me or my mom ever tried to leave him that he would nail our feet to the floor and burn the house down around us.
|4The jury heard a recording of several angry and profanity-laden voice mail messages left by the defendant in which he threatened to come home and “kick everybody’s ass” unless they returned his call. The defendant’s wife claimed to be unaware of the sexual misconduct of her husband. FRS reported the defendant’s actions to relatives and authorities in the spring of 2007 because of her fear for the safety of her younger sister.
Other victims came forward after FRS reported her stepdad.[4]
The three children spoke with Webster Parish Sheriffs deputies on March 30, 2007, and were interviewed a week later by a counselor from the Gingerbread House, a facility specializing in children’s issues. Both interviews were recorded on video.
Detective Teresa Rogers of the Webster Parish Sheriffs Office (“WPSO”) confirmed the accuracy of the Gingerbread House video recording, as well as the con *1026 sistency of the statements.[5] The trial court allowed the Gingerbread House interview to be published to the jury.
Also in the record are notations made by the female children on male and female anatomic drawings during the Gingerbread House interviews.
|fiIn her Gingerbread House interview, SMS (the youngest child, then in the second grade) told the interviewer that:
• she had once seen her father engaged in sexual conduct with FRS;
• she had seen the defendant put his “pencil,” or penis, into FRS’s “booty,” or anus, but that FRS told her not to tell their mother or the defendant would carry out his threat to kill the children;
• the defendant always walked around the house naked;
• her father exposed his penis to her during a recent camping trip, saying, “Take it, take it, take it,” but she hid under a pillow and nothing further occurred;[6]
• he once put his finger “in her private” when they were in the swimming pool;
• she had once seen her father “on top of’ GB while “his pencil was out” and that GB was saying, “No, no, no, no” as he tried to undress her; and
• she was present when the defendant was in the bedroom with GB, when her dad and GB were both naked and “wrestling.”
In her Gingerbread House interview, FRS related that:
• she was compelled to submit to repeated acts of vaginal, anal, and oral sex by defendant, beginning as early as age eight;
• defendant told her that “if I was to tell anybody, that he’d kill me”;
• her sister walked in on them in the fall of 2006; and
• that the defendant’s open household nudity was “an everyday thing.”
JWS, brother of the victim, was reluctant to speak but said that he had heard sexual noises during an encounter between FRS and his father.
Alleging inconsistencies between the videos, defendant offered the WPSO tapes into evidence. The court opted to defer ruling on that issue Runtil a later time, without objection. No proffer was ever made, and the WPSO tapes were never again offered into evidence.
Department of Social Services employee Ursulynn Hamilton testified that she had been at the Gingerbread House for the children’s interviews and also had interviewed the children separately. She testified that the children’s statements had been consistent but admitted that some statements made by FRS had differed in details, such as the frequency of abuse.
A medical doctor, Dr. Jennifer Rodriguez, testified that she had performed a sexual abuse examination of FRS on April 5, 2007. The doctor reported that the examination was normal; no physical evidence was found proving or disproving whether the child had engaged in intercourse.
The defendant chose to testify, his testimony being that:
• he denied routinely being unclothed at home, other than possibly one occasion when he entered the home after removing his dirty work clothes;
• he very seldom left work early;
*1027 • he was very strict on FRS and would not allow her to date;
• she did not like his rules;
• he never had sex with FRS or GB; and
• he never had any inappropriate contact with RS.
The jury apparently did not believe him. No one called JWS or SMS to the stand at trial.
On rebuttal, defendant’s work supervisor testified that the defendant did in fact leave work early from two to four times per week.
|7The jury returned unanimous verdicts of guilty as charged on all four counts. The defendant was sentenced as noted before. The trial court failed to order sex offender registration. A motion for reconsideration of sentence was denied.
DISCUSSION
A. Sufficiency
Our law on sufficiency is well settled.[7]
*1028 |gThe defendant recites a variety of alleged inconsistencies in the witnesses’ testimony, asserting that the jury should not have believed the children under the circumstances. We disagree. The jury heard any variations in the children’s accounts of these offenses and rationally chose to believe the children.
1. Aggravated Rape
The court incorrectly charged the jury with the law as to aggravated rape, without objection from the parties.[8]
The defective portion of the charge stated, with emphasis added:
Aggravated rape is a rape committed where anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because the victim is under the age of thirteen years[.]
Thus, in order to convict the defendant of aggravated rape, you must find:
(1) that the defendant committed an act of sexual intercourse with the victim; and
(2) that the victim was a person under the age of thirteen.
The charge lacked any other instruction regarding aggravated rape.
|9We regretfully find, sua sponte, that the aggravated rape charge was not proven. Prior to August 15, 2003, La. R.S. 14:42 provided, in pertinent part, with emphasis added:
A. Aggravated rape is a rape ... where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * =1=
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
[[Image here]]
(4) When the victim is under the age of twelve years.
The jury heard no argument nor received any instructions about La. R.S. 14:42(A)(2). Instead, the jury heard only about La. R.S. 14:42(A)(4), the type of aggravated rape based upon the age of the child victim. The court incorrectly instructed the jury that they could convict if it was proven that FRS was under 13 when raped.
FRS had turned 13 before August 15, 2003, the effective date of the statutory amendment expanding the applicability of aggravated rape to victims who are under 13 years old at the time of the crime. See State v. Kennedy, 42,850 (La.App. 2d Cir.1/9/08), 974 So.2d 203; State v. Rideout, 42,689 (La.App. 2d Cir.10/31/07), 968 So.2d 1210. It is axiomatic that a defendant must be tried under the law in effect at the time of the crime. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166.
In the original indictment, the state charged the defendant with the aggravated rape of FRS from May 11, 1998, through May 11, 2002; a |inhandwritten amendment changed the latter date to May 10, *1029 2003.[9] The defendant did not move his family to Webster Parish until the summer of 2002, at which time FRS (DOB 5/11/90) was already 12 years old. Previous to late summer of 2002, FRS had never lived in Louisiana. The rapes continued after the family moved to Webster Parish, up to the spring of 2007, when she reported the crimes.
Consider this chronology:
(a) 2002 — the age-related law in Louisiana, as to the aggravated rape of a young person, was defined as occurring when the child was under 12 years of age;
(b) May 11, 2002 — the rape victim turned 12;
(c) Summer of 2002 — the family (including the predator and the rape victim) moved to Louisiana;
(d) May 11, 2003 — the rape victim turned 13: and
(e) August 15, 2003 — the law of Louisiana was amended to reflect that one type of aggravated rape occurs when a rape victim is under 13 years of age.
In short, the victim was already 12 when she first moved from Texas to Louisiana. She turned 13 three months before the aggravated rape statute was amended to protect a class of victims under the age of 13.
Even when viewed in the light most favorable to the state, the evidence is insufficient to show that the family ever lived in Louisiana prior to FRS’s 12th birthday; the evidence affirmatively shows just the opposite. Louisiana has no jurisdiction to punish a defendant for criminal acts occurring entirely in another state; only when an act or element occurred in | uthis state does Louisiana have criminal jurisdiction. See La. Const. art. 1, § 16; La. C. Cr. P. arts. 16, 611.
The defendant did not raise this particular problem below and has not specifically raised it in this court. No motion to quash the indictment for want of jurisdiction was filed. The contemporaneous objection rule in La. C. Cr. P. art. 841 and the rule governing venue objections, La. C. Cr. P. art. 615, would normally militate against consideration of this issue on direct review. This issue is before us, however, because it is a critical error in the proceedings and because insufficiency of the evidence has been claimed. Consequently, as this court stated in State v. Speed, 43,786 (La.App. 2d Cir.1/14/09), 2 So.3d 582, with citations omitted:
Generally, a party may not assign as error a complaint to a jury charge in the absence of a contemporaneous objection. An invalid instruction on the elements of an offense is not a structural error and is therefore subject to harmless error review and only warrants reversal when the defendant is actually prejudiced by the error. An invalid instruction on the elements of an offense is harmless if the evidence is otherwise sufficient to support the jury’s verdict and the jury would have reached the same result if it had never heard the erroneous instruction. The determination is based upon whether the guilty verdict actually rendered in this trial was surely unattributable to the error.
The error is not harmless; far from it. To allow the conviction for aggravated rape would effectively condone an ex post *1030 facto law.[10]
There was no instruction as to any alternative theory of guilt for the crime of aggravated rape, particularly none as to La. R.S. 14:42(A)(2), a rape committed when the victim is prevented from resisting the act when the | ^offender threatens great and immediate bodily harm, accompanied by apparent power of execution. The evidence appears to have been sufficient to convict the defendant of aggravated rape under this alternative subsection, and we recognize that a jury is not constitutionally required to agree upon a single theory to convict a defendant where it is instructed as to alternative theories. Schad v. Arizona, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), rehearing denied; State v. Allen, 41,548 (La.App. 2d Cir.11/15/06), 942 So.2d 1244, writ denied, 2007-0530 (La.12/7/07), 969 So.2d 619. This jury, however, was given one theory, and it was not proven. Consequently, we lack the option of affirming this conviction under the “threats of great bodily harm” type of La. R.S. 14:42(A)(2), since this issue was never placed before the jury.[11] As noted in State v. Johnson, 541 So.2d 818, 827 (La.1989), a prosecution for first degree murder:
[Wjhere the evidence is insufficient to establish first degree murder under the only definition of that crime which was argued or provided to the jury, the conviction cannot be upheld based on speculation about what verdict the jury would have returned if it had been informed of a different statutory basis for concluding that the defendant’s crime constituted first degree murder[.]
In every homicide case, the prosecutor is free to attempt to establish that the defendant’s conduct satisfied any or all of the definitions of first degree murder contained in La. R.S. 14:30(A)(l)-(5). Here the prosecution chose to seek a first degree murder conviction on this charge based only on an aggravated kidnapping theory, one which was wholly unsupported by the evidence. When the prosecution chooses to limit its case in this fashion, a defendant cannot be convicted of first degree murder based on assumptions about what the jury would have found if the prosecution had presented its case differently.
113We have the same situation here. The errant jury instruction presents us with a fatal sufficiency problem, which bars the retrial of the defendant under any version of La. R.S. 14:42.
The state was not required to limit its case only to the age-based section of aggravated rape. Although the error may have been common to the parties and the court, no erroneous ruling of the court prevented the state from proceeding under alternative theories of aggravated rape, which distinguishes this situation from that in State v. Morris, 429 So.2d 111 (La.1983) (citing Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)), where the Louisiana Supreme Court allowed a retrial because of a jury instruction error, to which the state had objected.
It is traditional for appellate courts to address the sufficiency of the evidence before addressing trial errors. Here, the trial error and sufficiency problem are intertwined and inseparable. Accordingly, the trial evidence does not support the conviction of the charge of aggravated *1031 rape,[12] under the age-related versions of aggravated rape as it existed prior to the 13th birthday of FRS.
The proven heinous and deplorable acts committed upon FRS do allow us the option of entering a judgment of conviction for a lesser and included offense. La. C. Cr. P. art. 821 provides, in part:
E. If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
|14F orcible rape is a lesser included offense to a charge of aggravated rape. La. C. Cr. P. art. 814(A)(8). The crime is defined, in pertinent part, in La. R.S. 14:42.1:
A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent •the rape.
The jury was properly charged as to the crime of forcible rape, and that responsive crime was clearly proven beyond a reasonable doubt.
FRS testified at length about the defendant’s repeated threats to her -life and the threat to the life of her sister in conjunction with the defendant’s incessant demands for intercourse. The jury clearly found FRS to be a credible witness, and her testimony is ample to support a conviction for forcible rape for the many depraved acts practiced upon her in Louisiana, starting in the summer of 2002.
2. Aggravated Incest
The testimony of FRS alone is sufficient to support the conviction for aggravated incest. La. R.S. 14:78.1 provides, in part:
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following ... step ... relatives: child[.]
B. The following are prohibited acts under this Section:
(1) Sexual intercourse ... indecent behavior[.]
| ir,The acts of sexual intercourse between stepfather and stepdaughter went on for about eight years, over four years after the family moved to Louisiana, ending in the early spring of 2007 when FRS was 16. Defendant knew they were kin.[13]
3. Molestation
Defendant was also convicted of molestation of a juvenile under the age of 13, GB, a child born on January 13, 1994. She turned 13 on January 13, 2007. At trial in June of 2008, she was only 14 years old.
*1032 Among other indignities, GB described several instances before she was 13 years old when the defendant grabbed her and put his fingers inside her crotch. She said he raped her six or seven times. SMS, the younger sister, who was also a victim of her father, testified corroboratively as to the defendant sexually forcing himself upon GB.
Defendant lived in Louisiana about 4jé years before GB turned 13. The basic crime of molestation of a juvenile, during this entire 4!/2-year period, was defined in La. R.S. 14:81.2(A) as follows:
A. Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile’s age shall not be a defense.
There are two difficult issues concerning what happened to GB.
| if,First, molestation requires proof of the “use of force.” In State v. LeBlanc, 506 So.2d 1197 (La.1987), the supreme court stated:
Some minimum degree of force or physical effort is required to commit the lewd act which is an essential element of the crime of indecent behavior with a juvenile. When the more serious crime of molestation of a juvenile was enacted with the additional essential element of “use of force”, the Legislature must have contemplated a requirement of additional aggravating conduct consisting of some added element of force, above and beyond that force or effort necessary to commit the lewd act upon the person.
A genuine construction of La. R.S. 14:81.2 as part of the overall criminal law pertaining to lewd acts with juveniles therefore leads to the conclusion that the Legislature contemplated a requirement of something more than the mere exertion of physical effort necessary to commit the lewd act. Properly construed, the “use of force” element refers to the forcible means of overcoming the will or the resistance of the victim, and this additional essential element requires a use of force in addition to any mere touching or minimum effort exerted in performing the lewd act.
The child testified that the defendant “grabbed” her and touched her genitals. The prom photo of the defendant[14] reveals a large and stocky adult. GB was under 13 at the times she was victimized. The jury was reasonable in concluding that the defendant used force to complete the crime.
The second crucial issue is whether any instances of molestation were proven during the time frame starting on August 15, 2006.[15] and running through January 12, 2007.[16]
| ,7The wording of Subsection E of the molestation statute, during that five-month time frame, read as follows:
*1033 E. (1) Whoever commits the crime of molestation of a juvenile when the victim is under the age of thirteen years, shall be imprisoned at hard labor for not less than twenty-five years nor more than life imprisonment. At least twenty-five years of the sentence imposed shall be served without benefit of probation, parole, or suspension of sentence.
We feel that the application of the harsher sentence for the molestation of his child is justified by the time frame proven at trial:
• GB’s date of birth is January 13, 1994;
• The first molestation occurred at the barbeque, when she was “about 11 years old,” which would have been August of 2005;
• The defendant himself testified that the barbeque was in August (no year was given);
• GB testified that she quit going over there “for about a year” after this started happening;
• The year of absence was “in 2005 or 2006”;
• GB was raped by him “six or seven times” and apparently touched inappropriately other times, sometimes when she went to the bathroom;
• August 15, 2006, was the effective date of Subsection E of the molestation statute, which increased the possible sentence for molestation of a child under 13 to a minimum sentence of 25 years at hard labor, up to a life sentence, with at least 25 years required to be served without benefits;
• GB turned 13 on January 13, 2007; the defendant therefore had almost five months of “25 to life” exposure for molesting GB (August 15, 2006-Janu-ary 12, 2007);
• the date of the last rape was in February of 2007, according to GB, the last time she had stayed overnight at the defendant’s trailer house;
• the defendant’s wife confirmed that GB last stayed over about a week before the defendant left on a trip in March 2007;
|18* it defies all logic that this repulsive pattern of lewd and lascivious conduct towards GB would occur before and after this five-month window, but abruptly cease, cold turkey, during this window;
• WPSO became involved in late March 2007 when GB was 13; and
• GB was 14 when she testified at trial.
Defendant was sentenced to serve 10 years at hard labor. We vacate the illegally lenient sentence and remand this matter for resentencing.
4. Sexual Battery
Defendant was also convicted of sexual battery against RS (DOB 3/2/92). She became 13 on March 2, 2005.
At the time of this crime, sexual battery was defined in La. R.S. 14:43.1, in pertinent part, as follows:
A. Sexual battery is the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender[.]
Touching through clothing is sufficient to complete the touching element of the crime. State in Interest of D.M., 1997-0628 (La.App. 1st Cir.11/7/97), 704 *1034 So.2d 786; State v. Bouton, 615 So.2d 23 (La.App. 3d Cir.1993).
The defendant made RS sit on his lap. He then put his hand on “the part between my legs.” This is sufficient to convict the defendant of sexual battery.
11flThe charge erroneously required the jury to find the victim to be under the age of 13 when victimized. The enhanced penalty provision of the sexual battery statute relative to sexual battery victims under the age of 13, La. R.S. 14:43.1(E), did not become effective until 17 months after RS had already turned 13. Still, the jury found that the victim was under 13, which is also under 17.[17]
Defendant was sentenced to serve 10 years at hard labor for the sexual battery offense. This crime requires that any sentence be served without benefit of suspension of sentence, probation, and parole. Accordingly, we vacate the previous sentence and remand this matter for resen-tencing.
B. Video(s) of WPSO Interviews
Defendant urges that his right to confront the witnesses against him was violated by the trial court’s refusal to admit into evidence the video recordings of the children taken at their March 30, 2007, interviews at the WPSO. We find that the trial court acted within its discretion to defer the defendant’s request to enter the videos into evidence, as per La. C. Cr. P. art. 765, which provides, in part:
The normal order of trial shall be as follows:
(5) The presentation of the evidence of the state, and of the defendant, and of the state in rebuttal. The court in its discretion may permit the introduction of additional evidence prior to argument[.]
|2n’“A defendant may offer material into evidence ... after the state has presented its case in chief.” See State v. Edwards, 420 So.2d 663 (La.1982).
The record reflects that the defendant did not object to the prosecutor’s questions to Detective Rogers about the consistency of the children’s prior statements and the defendant chose to question the witness about her recollections of the children’s statements. The statements in question were made by other witnesses, not by the detective, and the record reflects that the child witnesses were available to testify. Only one of those witnesses — FRS—actually testified, and the defendant was allowed to exercise his right of confrontation and cross-examination with her on the stand.
The defendant did not recall Detective Rogers and he did not call his two children by blood, during any of which testimony the defendant could have offered the WPSO videos into evidence. Further, the record does not reflect that the defendant objected to the deferral of his motion to introduce the video evidence, and these videos were not proffered into the record. With no timely objection to the court’s deferring a ruling on this issue, and without any further attempt to place the videos into evidence, the defendant effectively waived his right to pursue any error regarding the videos. La. C. Cr. P. art. 841.
C. Ineffectiveness
Ineffective claims are better raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal, since PCR |21 creates the opportunity for a *1035 full evidentiary hearing under La. C. Cr. P. art. 930. State v. Ellis, 42,520 (La.App. 2d Cir.9/26/07), 966 So.2d 139, writ denied, 07-2190 (La.4/4/08), 978 So.2d 325. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,-394 (La.App. 2d Cir.9/27/95), 661 So.2d 673.
In the instant case, the matters complained of are arguably part of a valid trial strategy by counsel to raise the issue of the children’s credibility but avoid any prejudicial effect of repeated viewing of their out-of-court statements. Defendant may have felt that their additional testimony might have negatively swayed the jury. These choices are not, on their face, evidence of ineffective assistance of counsel at trial.
ERRORS PATENT
The defendant was not ordered to register as a sex offender per La. R.S. 15:540, et seq.; the trial court is directed to correct this omission at remand.
CONCLUSION
We vacate the conviction of aggravated rape, entering in its place a conviction for forcible rape, and remand the case for sentencing for that crime.
We affirm the other three convictions.
We vacate' the sexual battery sentence and remand for resentencing, noting that all of the sentence must be served without benefits.
|22We vacate the molestation sentence and remand for resentencing, noting that the appropriate sentence for the crime of conviction requires that the defendant must serve at hard labor from 25 years to life.
All four matters are remanded for the administration of the appropriate instructions as to sex offender registration requirements.
DECREE
CONVICTION OF AGGRAVATED RAPE IS VACATED. CONVICTION OF FORCIBLE RAPE IS ENTERED AND THE MATTER IS REMANDED FOR SENTENCING ON THE AMENDED CONVICTION.
CONVICTION AND SENTENCE FOR AGGRAVATED INCEST ARE AFFIRMED.
CONVICTION FOR MOLESTATION OF A JUVENILE IS AFFIRMED. THE SENTENCE IS VACATED AND THE MATTER IS REMANDED FOR RESENTENCING.
THE SEXUAL BATTERY CONVICTION IS AFFIRMED. THE SENTENCE IS VACATED AND THE MATTER IS REMANDED FOR RE-SENTENCING.
ALL FOUR MATTERS ARE REMANDED FOR THE TRIAL COURT TO ADVISE THE DEFENDANT AS TO SEX OFFENDER REGISTRATION REQUIREMENTS.

. The indictment, as amended, charged the defendant with aggravated rape during the five-year period running from the dates of May 11, 1998, through May 10, 2003, the date before the rape victim became 13.

. Initials of the victims are used per La. R.S. 46:1844(W).

. The record contains a prom photo of a dressed-up defendant and his stepdaughter, FRS.

. During this same time frame, two other young girls alleged wrongdoing by the defendant: GB, a female born on January 13, 1994, and RS, a female bom on March 2, 1992. Both said that the defendant had engaged in sexual misconduct with them. These girls had attended a barbeque held by the defendant at his home in Webster Parish, although neither was certain of the exact date of the event.
RS said that she was "maybe” 12 years old at the barbeque, and as she walked past the defendant, he grabbed her between her legs, pulled her to him, and made her sit on his lap. At a swimming party, he untied her bathing suit top, causing it to fall off.
GB said that she was about 11 years old at the time of the barbeque, at which the defendant grabbed her and put his hand "under my privates and he would move his fingers.” At other times he would "touch me on my be-tweens” and put his fingers "in my be-tweens.” She said this occurred before she was 13 years old. She described other instances when he had raped her during overnight visits at the defendant’s trailer home.

. The first to the WPSO deputies; the second at the Gingerbread House.

. Prior to trial, the state provided notice to the defendant of its intent to offer evidence of other crimes.

. When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La. 10/17/97), 701 So.2d 1333.
The Jackson standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Hill, 42,025 (La.App. 2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Parker, 42,311 (La.App. 2d Cir.8/15/07), 963 So.2d 497; State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,-981 (La.App. 2d Cir.5/9/07), 956 So.2d 769; State v. Burd, 40,480 (La.App. 2d Cir. 1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35. This is equally applicable to the testimony of victims of sexual assault. State v. Robinson, 36,147 (La.App. 2d Cir.12/11/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La.App. 2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 *1028 (La.10/12/01), 799 So.2d 490. See also State v. Simpson, 39,268 (La.App. 2d Cir.1/26/05), 892 So.2d 694. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Robinson, supra; State v. Ponsell, supra.

. This mistake was easy to make. By time of trial, the relevant age bracket for aggravated rape had been “under 13“ for over five years. The peculiar timing of the events in this case, years before the prosecution began, precipitated the erroneous charge to the jury.

. The bill of information charging defendant with aggravated incest with FRS lists the dates of the offenses as May 11, 2003, through March 29, 2007, so the dates of the offenses do not overlap.

. For an extended discussion of the prohibition against ex post facto laws, see State ex rel. Olivieri v. State, 2000-0172, p. 11 (La.2/21/01), 779 So.2d 735, 742, cert. denied.

. Neither in argument, nor as instructed by the trial court.

. See State v. Langley, 2006-1041 (La.5/22/07), 958 So.2d 1160, cert. denied.

. Incest (La. R.S. 14:78) requires consanguinity (blood kinship) between predator and victim: aggravated incest (La. R.S. 14:78.1) does not.

. A man in his early 40s, resplendent in his high school prom attire.

. This is the date when the increased penalty provision (25 years to life) for molestation of a child under 13 became effective, as Subsection E of the statute. 2006 La. Acts Nos. 103 and 325.

.GB turned 13 on January 13, 2007.

. The sexual battery charge to the jury also requires proof of the specific intent to commit the crime. This appears to be a greater burden than is legally required. La. R.S. 14:11. But compare our dicta in State v. D.M., 958 So.2d 77, 84 (La.App. 2d Cir.5/9/07).