Judgment rendered August 27, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,400-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

RORY CHEVALIER PIPKIN                       Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 386,967

Honorable John D. Mosely, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

TOMMY J. JOHNSON
COURTNEY RAY
Assistant District Attorneys

* * * * *

Before COX, STEPHENS, and HUNTER, JJ.

**COX, J.**

This case arises out of the First Judicial District Court, Caddo Parish, Louisiana. Rory Chevalier Pipkin was convicted of third degree rape and sentenced to 55 years of imprisonment without probation, parole, or suspension of sentence. Pipkin now appeals his sentence. For the following reasons, we affirm Pipkin's conviction, vacate his sentence, and remand for resentencing in accordance with this opinion.

## FACTS

Pipkin was indicted on April 28, 2022, for the first degree rape of A.K. (D.O.B. 2/14/2012) from January 1, 2017, through June 6, 2019. The following testimonies and evidence were presented at trial:

Xavier Kennon testified that her daughter dated Pipkin for a year and a half to two years. She stated that they lived in Shreveport before relocating to Dallas, Texas in 2019. Ms. Kennon testified that Pipkin, her daughter, and her granddaughter, A.K., lived together, and A.K. would be left alone with Pipkin. She testified that on June 6, 2019, A.K. told her that Pipkin would have her try on dresses and touch her inappropriately. Ms. Kennon stated that A.K. told her Pipkin had her put his penis in her mouth. A.K. told Ms. Kennon that she could draw a picture to show what happened, and A.K.'s drawings were submitted as evidence. Ms. Kennon stated that she called the police, and the police had A.K. examined and taken to the Gingerbread House.

A.K. testified that at the time of trial, she was 12 years old and in the sixth grade. She stated that in 2017, she was living with her mom and Pipkin in Shreveport and then Texas. She stated that when she was living with her mom, Pipkin would take care of her during the day. A.K. testified

that she remembered being interviewed at the Gingerbread House.  A video of A.K.'s Gingerbread House interview was played for the jury, where A.K. described the incidents of performing oral sex on Pipkin.  A.K. identified the pictures she drew for her grandmother.

Lacie Hadley, forensic interviewer at the Gingerbread House Children's Advocacy Center, was accepted as an expert in forensic interviewing and the dynamics of child sexual assault.  Ms. Hadley testified that she did not interview A.K.  She explained how the Gingerbread House works, different types of disclosures by children, and research related to the disclosures of elementary-aged children after sexual encounters.

On cross-examination, Ms. Hadley admitted that she has heard of false reports and that there is concern in the interview process that the person being interviewed will be influenced by the expectations of the interviewer.  Ms. Hadley testified regarding general concerns that might arise when interviewing.  She emphasized that the goal of the Gingerbread House is not to determine if a report is true or false; the goal is to make the child feel comfortable to talk about "whatever it is that they need or want to talk about."

Dr. Jennifer Rodriguez was accepted as an expert in pediatric child abuse.  She testified that she did not examine A.K. but reviewed the report of A.K.'s examination.  Dr. Rodriguez testified that A.K.'s throat, mouth, anal, and genital exams were within normal limits.  She stated that it is common for children who have been sexually abused to have normal exams because the mouth and genitals heal quickly.

Sh'Quilla Kennon, A.K.'s mother, testified for the defense. She stated that she was not interviewed by law enforcement regarding A.K.'s disclosure of sexual abuse.

Tori Leathers testified that Ms. Kennon (A.K.'s grandmother) was overbearing. Tajuana Jackson, Pipkin's mother, testified that Ms. Kennon was controlling.

A unanimous jury found Pipkin guilty of the responsive verdict of third degree rape. Pipkin filed a motion for post-verdict judgment of acquittal and a motion for new trial, both of which were denied by the trial court.

Pipkin was adjudicated as a fourth habitual offender based on the following prior convictions: aggravated flight from an officer on April 3, 2017 (in violation of La. R.S. 14:108.1(C)); possession with intent to distribute a Schedule 1 CDS on May 1, 2012 (in violation of La R.S. 40:966(A)(1)); and cultivation of marijuana on October 30, 2007 (in violation of La R.S. 40:966).

At sentencing, the trial court stated the abuse occurred from the time A.K. was five to seven years old, and had the child not disclosed to her grandmother, the victimization would have continued for a longer period of time. The trial court stated, "[T]aking into consideration Article 893, 894, and the … likelihood of the defendant committing a subsequent crime or crime of this nature and all the testimony exhibited at trial, the Court will sentence the defendant to 55 years at hard labor without the benefit of parole, probation or suspension of sentence[.]"

Pipkin filed pro se and counseled motions to reconsider sentence. In the pro se motion, he argued that the trial court erred in not advising him of

his rights under the habitual offender law and failing to order a PSI. He also argued that his sentence is unconstitutionally excessive. Pipkin's counsel argued that the sentence is excessive. The trial court denied the motions to reconsider and stated, "Petitioner filed this motion within the time constraints however, the Petitioner was sentenced according to the applicable law and there is nothing to suggest that such sentence is illegal. The court is not disposed at this time to upset the imposed sentence."

Pipkin now appeals his sentence.

## DISCUSSION

*Motion to Reconsider Sentence*

Pipkin argues that the trial court erred in denying his motion to reconsider sentence. He asserts that the trial court relied on an incorrect interpretation of law in stating that sentences cannot be amended once they are executed. Pipkin states that he filed his motion to reconsider his sentence within the time delays of La. C. Cr. P. art. 881.1, which is an exception to the general rule that sentences cannot be amended. He asserts that because the trial court relied on an incorrect interpretation of the law that sentences cannot be amended, he was deprived of a considered review of his motion. He asks for a remand to properly consider his motion to reconsider his sentence.

Each motion to amend or modify a sentence imposed shall be filed, considered, and decided in compliance with Code of Criminal Procedure Articles 881 and 881.1. La. C. Cr. P. art. 822. In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence. La. C. Cr. P. art. 881.1(A)(1).

4

The trial court stated Pipkin fell under art. 881.1 because his sentence was at hard labor and recognized that Pipkin filed within 30 days. The trial court stated, "Petitioner filed this motion within the time constraints however, the Petitioner was sentenced according to the applicable law and there is nothing to suggest that such sentence is illegal. The court is not disposed at this time to upset the imposed sentence." The trial court did not state that Pipkin's sentence *could not* be amended but that his sentence was not illegal because he was sentenced according to applicable law. Pipkin misconstrues the trial court's ruling. This argument lacks merit.

*Excessive Sentence*

Pipkin argues that his sentence is unconstitutionally harsh and excessive. He highlights that a PSI was not ordered, and the trial court did not provide a basis for the sentence imposed. He argues that his sentence was not particularized to him because no information was provided regarding his social or employment history, and the trial court only mentioned this offense and his prior convictions before imposing the sentence. He asserts that because he was 36 at the time of the sentence, a 55-year sentence is basically a life sentence. Pipkin argues that the sentencing record does not reflect that he is the worst of the worst or that he deserves a maximum sentence. He asks this Court to vacate his sentence.

An excessive sentence claim is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1, and whether the sentence is constitutionally excessive. *State v. Wing*, 51,857 (La. App. 2 Cir. 2/28/18), 246 So. 3d 711.

First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The articulation of the factual

basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Trotter, supra*. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Vanhorn*, 52,583 (La. App. 2 Cir. 4/10/19), 268 So. 3d 357, *writ denied*, 19-00745 (La. 11/19/19), 282 So. 3d 1065. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Vanhorn, supra*.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Trotter, supra*. A trial judge is in the best position to consider the aggravating and mitigating

6

circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Trotter, supra.* Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence. *State v. Vanhorn, supra.*

Whoever commits the crime of third degree rape shall be imprisoned at hard labor, without benefit of parole, probation, or suspension of sentence, for not more than 25 years. La. R.S. 14:43.

A defendant adjudicated a habitual offender should be sentenced in accord with the version of the habitual offender law in effect at the time of the commission of the charged offense. *State v. Belvin*, 18-0421 (La. App. 4 Cir. 4/3/19), 363 So. 3d 320. Pipkin's offense occurred between January 1, 2017, and June 6, 2019. The Habitual Offender Statute, La. R.S. 15:529.1, was revised multiple times during the range of time that the offense occurred. La. R.S. 15:529.1(A)(4)(a) remained the same and stated that if the fourth or subsequent felony is punishable by imprisonment for any term less than his natural life, then "[t]he person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest period of the first conviction but in no event less than twenty years and not more than his natural life."

However, from January 1, 2017, through October 31, 2017, La. R.S. 15:529.1(A)(4)(b) stated:

> If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or

> more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

Therefore, if Pipkin were sentenced under the habitual offender statute prior to November 1, 2017, he would have been subject to a mandatory life sentence. Effective November 1, 2017, that provision was amended to remove violations of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more and any other crime punishable by imprisonment for 12 years or more. After November 1, 2017, Pipkin would have been sentenced under La. R.S. 15:529.1(A)(4)(a), and his sentencing range would be 25 years to life.

In *State v. Roth*, 52,359 (La. App. 2 Cir. 11/14/18), 260 So. 3d 1230, *writ denied*, 18-2059 (La. 6/17/19), 273 So. 3d 1210, the crime occurred over a seven-year period, during which the sentencing range was amended. The trial court could use either version of the statute to sentence Roth because the crime occurred during the effective period for both versions of the statute. In Roth, the trial court stated which version of the statute it used for sentencing. This Court affirmed the use of either sentencing provision.

In *State v. Thibodeaux*, 12-300 (La. App. 3 Cir. 10/24/12), 100 So. 3d 398, the Third Circuit was faced with a similar situation where two habitual offender sentencing provisions could apply, with one provision being a mandatory life sentence. The trial court did not specify which provision was used in sentencing the defendant. The Third Circuit found that it could not speculate as to what grounds the trial court determined the sentence in this case, i.e., was he sentenced under the more lenient provision or did the judge decide to make a downward departure from the mandatory sentence? The

8

*Thibodeaux* court vacated the defendant's sentence and remanded for resentencing.

In *State v. Simpkin*s, 44,197 (La. App. 2 Cir. 5/13/09), 12 So. 3d 1021, *writs denied*, 09-1229 (La. 2/5/10), 27 So. 3d 296, and 09-1539 (La. 3/5/10), 28 So. 3d 1004, the sentencing range was amended during that period the crime occurred. The victim in the *Simpkins* case testified that she was molested over a two-year period, that defendant raped her six or seven times, and that the last rape occurred the last time she stayed over at defendant's house. The defendant's wife confirmed that the last time victim stayed over was before March of 2007, which was six months after the new sentencing effective date that increased the possible sentence. This Court found that the harsher sentencing range should have been used based on the time frame proven at trial, vacated the defendant's sentence, and remanded for resentencing.

After resentencing, the Louisiana Supreme Court reversed the *Simpkins* court. *State ex rel. Simpkins v. State*, 12-1599 (La. 12/14/12), 102 So. 3d 776. The Louisiana Supreme Court found that "the court of appeal made a factual determination that [the defendant] must have molested the victim during the five-month window between the effective date of the amendment and the victim's 13th birthday." The State agreed that the new sentence was "based on facts not found by the jury at trial, but assumed by the court of appeal[.]" The Louisiana Supreme Court vacated the new sentence and reinstated the original sentence. *Id*.

As stated above, when the crime occurs over a period of time in which the sentencing range is amended, either sentencing provision may be used. The same is true for habitual offender sentencing that is amended during the

time span of the crime. However, we do not assume which effective date of the habitual offender law that was used when the trial court is silent. The jury was not tasked with making a factual determination as to whether the crime occurred before or after November 1, 2017, the effective date of the pertinent habitual offender sentencing amendments. Either habitual offender sentencing provision is appropriate because the crime occurred from 2017 through 2019. However, without knowing which habitual offender provision was used, we cannot properly analyze Pipkin's sentence; he could have a mandatory life sentence or a sentencing range up to life imprisonment. Therefore, we do not reach the determination of whether Pipkin's sentence was excessive. We vacate Pipkin's sentence and remand for resentencing for the trial court to specify which habitual offender law effective date and provision is used during sentencing.

## CONCLUSION

For the foregoing reasons, Pipkin's conviction is affirmed. Pipkin's sentence is vacated and remanded for resentencing with instructions.

**AFFIRMED IN PART; SENTENCE VACATED; REMANDED WITH INSTRUCTIONS.**