PITMAN, J.
LA unanimous jury convicted Defendant Steve Allen Humphries as charged of three counts of aggravated incest. The trial court originally sentenced Defendant to 45 years at hard labor without the benefit of probation, parole or suspension of sentence for Count One, to 10 years at hard labor for Count Two and to 15 years at hard labor for Count Three. The trial court ordered these sentences to run concurrently. After Defendant filed a notice of appeal, the state filed a motion to reconsider sentence. The trial court granted the state’s motion and sentenced Defendant to 45 years at hard labor without the benefit of probation, parole or suspension of sentence for Count One, to 16 years at hard labor for Count Two and to 16 years at hard labor for Count Three. The trial court ordered Counts Two and Three to run concurrently with each other and consecutively with Count One.
Defendant now appeals his conviction as to Count One and claims his sentence is excessive. For the following reasons, we affirm Defendant’s conviction and sentence.
*1179 FACTS
On July 7, 2011, the state filed a bill of indictment charging Defendant with three counts of aggravated incest of his stepdaughter, K.W.,[1] in violation of La. R.S. 14:78.1. Count One alleges that, between the dates of January 1, 2000, and December 19, 2008, Defendant committed aggravated incest with K.W., a person who is under 13 years of age and who is related to Defendant by being his stepdaughter. Counts Two and Three allege that, between the dates of December 19, 2008, and June 8, 2011, ^Defendant committed aggravated incest with K.W., a person who is under eighteen years of age and who is related to Defendant by being his stepdaughter. On July 13, 2011, Defendant pled not guilty. A jury trial began on July 16, 2012.
K.W., born on December 19, 1995, testified that her mother, M.H., married Defendant when K.W. was five, almost six, years of age, making Defendant her stepfather. K.W. lived with her mother and stepfather and thought of Defendant as her father because she had no contact with her biological father.
K.W. testified:
I was around the age of five and six, and he would make me rub his penis with my hand. He would forcibly make it-make me do that.
[[Image here]]
He told me that if I told that it would make my mother’s life miserable and he would just hurt me more than what he was actually making me do.
K.W. testified that this would happen two or three times a week. K.W. further testified:
I was around the age of eight to ten and he would make me get naked and bend over so that he could see my vaginal area and he would masturbate.
[[Image here]]
He would ask me every day, but I wouldn’t do it every day. It would be three or four times a week.
K.W. also testified that, when she was eight or nine years old, Defendant “stuck a spark plug up my butt.... He told me that he was — that he plugged me up so nobody else could have me.” K.W. added that, beginning when she was approximately ten years old, Defendant showed her pornographic movies. K.W. explained that her mother was not home when all of these | (¡actions occurred. K.W. testified that, when she was 12 years old, she told her mother that Defendant had “been touching me in the wrong areas.” K.W. explained that Defendant “found out that I told and he immediately threatened me, that if I didn’t tell her that it was a lie that he would hurt me,” so K.W. recanted and told her mother she had lied.
K.W. further testified that, before the age of 10, Defendant never touched her; but, from the ages of 10 to 15, “he had never penetrated me until I was fifteen. He had fondled with me, but he had never actually penetrated me.” K.W. further testified that, when she was 15 years old, Defendant began asking her to have anal sex with him. K.W. recalled that the first time they had anal sex was on Defendant’s birthday, February 26, 2011.[2] K.W. stated that they had anal sex over 20 times, with the last time being on May 29, 2011. K.W. initially did not tell her mother because Defendant threatened K.W. that, if she told, “he would do something way worse to *1180 me than what he was doing.” K.W. eventually did tell her mother, which led to the investigation of Defendant.
Sgt. Jo Caston of the Ouachita Parish Sheriffs Office testified that she works on sex crimes and child abuse cases. She stated that the Sheriffs Office received a complaint involving Defendant on June 8, 2011, and that she was assigned the case the next day. Sgt. Caston had K.W. interviewed at the Children’s Advocacy Center and arranged for her to be examined by Dr. Meade O’Boyle, a pediatrician who focuses on child sexual abuse. On June 14, 2011, Sgt. Caston located Defendant at his place of work and asked | ^Defendant if he would be willing to speak with her. Sgt. Caston testified that she explained the Miranda rights to Defendant and then began asking him about his sexual conduct with K.W. Sgt. Caston testified that Defendant originally denied having sexual contact with K.W. Sgt. Caston explained that she told Defendant a lie that K.W. said they had consensual sex, saying:
I don’t remember my exact words, but I said something to the effect of look, man, [K.W.] told me all about it, and I know it was consensual; she wanted to do it just like you did. And his whole demeanor and countenance changed.... He started smiling and kind of chuckling and laughing a little bit and admitted.
Several minutes into the conversation, Sergeant Caston turned on a tape recorder to record the remainder of their conversation.
In the recorded conversation,[3] Defendant denied that he had touched K.W. from the age of five and denied that he threatened K.W. if she told anyone about their sexual contact. Defendant admitted that he and K.W. had been having sex for two months. He stated that he and K.W. talked about having children and “whether or not we’d make a pretty baby.” Defendant then detailed the first time he and K.W. had anal sex and that they had anal sex again a few weeks later.[4]
Dr. O’Boyle testified that she examined K.W. on June 13, 2011, and stated that she took a history from K.W. in which K.W. described how Defendant engaged in improper sexual actions with her. Dr. O’Boyle 1 ..¡performed a physical examination of K.W. and noted that K.W. “had a normal, intact hymenal ring which means that she had not had sex vaginally.” Dr. O’Boyle further noted:
Examination of her anus showed a large anal tag and there was venous pooling. This is normal. And there was scarring all over her anus. The architecture was very, very distorted from the normal that I usually see.
[[Image here]]
Normally, the anus has muscles that go around, and they’re all like this. But hers were all distorted in appearance. And she had scarring. And it was — it looked like she had taken trauma to her anus on repeated occasions.
Dr. O’Boyle testified that the condition of KW.’s anus was consistent with that of someone who had been anally penetrated 20 or more times.
On July 18, 2012, the jury unanimously found Defendant guilty as charged of all three counts of aggravated incest. On October 16, 2012, the trial court sentenced Defendant to 45 years at hard labor without the benefit of probation, parole or suspension of sentence for Count One, to 10 years at hard labor for Count Two and to *1181 15 years at hard labor for Count Three, with all three sentences to run concurrently-
On October 19, 2012, Defendant filed a notice of appeal and a motion to reconsider sentence. The trial court denied the motion to reconsider sentence. On October 26, 2012, the state filed a motion for reconsideration of sentence, and the trial court granted the state’s motion. On April 1, 2013, the trial court resentenced Defendant to 45 years at hard labor without the benefit of probation, parole or suspension of sentence for Count One, to 16 years at hard labor for Count Two and to 16 years at hard labor for Count | fiThree. The trial court ordered Counts Two and Three to run concurrently with each other and consecutively with Count One.
On April 11, 2013, Defendant filed a motion to reconsider sentence, which was denied by the trial court on April 12, 2013.
Defendant appeals his conviction as to Count One and his sentence.

DISCUSSION

Sufficiency of the Evidence

In his first assignment of error, Defendant argues that the evidence was insufficient to prove beyond a reasonable doubt that he was guilty of aggravated incest as set forth in Count One. Defendant contends that KW.’s testimony was not credible enough to support a guilty verdict. Defendant does not challenge the convictions on Counts Two and Three.
The standard of appellate review for a sufficiency of the evidence claim is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hearold, 603 So.2d 731 (La.1992); State v. Smith, 47,983 (La. App.2d Cir.5/15/13), 116 So.3d 884. See also La. C. Cr. P. art. 821. This standard does not provide an appellate court with a vehicle for substituting its appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
|7The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022. A reviewing court may not impinge on the fact finder’s discretion unless it is necessary to guarantee the fundamental due process of law. Id. The appellate court does not assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. State v. Ford, 28,724 (La.App.2d Cir.10/30/96), 682 So.2d 847, writ denied, 99-0210 (La.5/14/99), 745 So.2d 12. Likewise, the sole testimony of a sexual assault victim is sufficient to support a requisite factual finding. State v. Watson, 32,203 (La.App.2d Cir.8/18/99), 743 So.2d 239, writ denied, 99-3014 (La.3/31/00), 759 So.2d 69. The testimony of one witness is sufficient to prove the elements of an offense even when the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant: State v. Turner, 591 So.2d 391 (La.App. 2d Cir. 1991), writ denied, 597 So.2d 1027 (La.1992).
*1182 Thus, in order for Defendant’s conviction to be upheld, the record must establish that the state proved beyond a reasonable doubt all of the | Ressential elements of aggravated incest. La. R.S. 14:78.1 states the elements of aggravated incest:[5]
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
B. The following are prohibited acts under this Section:
(1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile or a person with a physical or mental disability, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.
C. Consent is not a defense under this Section.
As to Count One, Defendant was specifically charged with committing aggravated incest with a person who is under 13 years of age. La. R.S. 14:78.1(D)(2) provides an enhanced penalty for this charge:
Whoever commits the crime of aggravated incest on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
The testimony of K.W. is sufficient to support the conviction of aggravated incest for Count One, which encompasses the time range of January 1, 2000, to December 19, 2008, when she was under 13 years of 19age. K.W.’s testimony established that Defendant is married to KW.’s mother, making Defendant her stepfather, which satisfies the element of aggravated incest in La. R.S. 14:78.1(A) that the offender must be related to the victim as a stepparent.
K.W.’s testimony also demonstrated that Defendant engaged in acts prohibited by La. R.S. 14:78.1(B)(1) and (2), i.e., Defendant “would make me rub his penis with my hand” two or three times a week (when she was 5 and 6 years old), Defendant “would make me get naked and bend over so that he could see my vaginal area and he would masturbate” three or four times a week (when she was ages 8 to 10) and Defendant “stuck a spark plug up my butt.... He told me that he was — that he plugged me up so nobody else could have me” (when she was 8 or 9 years old). K.W. added that, when she was approximately 10 years old, Defendant began showing her pornographic movies. K.W. further testified that, before the age of 10, Defendant never touched her; but, from the ages of 10 to 15, “he had never pen *1183 etrated me until I was fifteen. He had fondled with me, but he had never actually penetrated me.”
KW.’s testimony was also sufficient to prove the additional elements of La. R.S. 14:78.1(D)(2) that Defendant committed aggravated incest with her when she was under the age of 18 and he was over the age of 17. K.W. testified that she was born on December 19, 1995. As detailed in the preceding paragraph, K.W. testified that Defendant committed acts prohibited by La. R.S. 14:78.1(B) when she was under the age of 13, beginning when she was 5 years of age. KW. further testified that 110Defendant was 36 years of age at the time of trial in July 2012, making him older than 17 years of age when he began committing aggravated incest approximately 11 years earlier. Additionally, on the responsive verdicts form, the jury was specifically asked, “Do you find that any act or acts which form the basis of your verdict occurred while the victim was under the age of 13, and while the defendant was over the age of 17?” The jury answered ‘Tes.”
There was sufficient evidence presented at trial to establish all the essential elements of aggravated incest beyond a reasonable doubt. The testimony of the victim alone was sufficient to convict Defendant. See State v. Watson, supra. It is the role of the trier of fact to determine the credibility of the witness. See, State v. Casey, supra. The jury could have chosen to reject the testimony of K.W. had they not found her to be credible. The unanimous verdict of the jury, however, suggests that they believed and accepted K.W.’s testimony and found her to be a credible witness. The evidence presented at trial was clearly sufficient to sustain the conviction of Defendant as to Count One. Therefore, we find that this assignment of error lacks merit.

Excessive Sentence

In his second assignment of error, Defendant argues that the trial court erred in imposing an unconstitutionally excessive sentence. Defendant contends that the 45-year sentence for Count One is excessive and a violation of ex post facto. Defendant also contends that the trial court erred when ordering that his sentences for Counts Two and Three run ^consecutively with the sentence for Count One. Defendant further argues that the total sentence of '61 years is excessive and constitutes cruel and unusual punishment.
Defendant filed two motions to reconsider sentence — one after he was originally sentenced and another after he was resen-tenced. La. C. Cr. P. art. 881.1(E) states:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
The Louisiana Supreme Court explained in State v. Mims, 619 So.2d 1059 (La.1993):
Under Article 881.1 the defendant must file a motion to reconsider and set forth the “specific grounds” upon which the motion is based in order to raise an objection to the sentence on appeal. However, in order to preserve a claim of constitutional excessiveness, the defendant need not allege any more specific ground than that the sentence is excessive. If the defendant does not allege any specific ground for excessiveness or present any argument or evidence not previously considered by the court at original sentencing, then the' defendant does not lose the right to appeal the sentence; the defendant is simply relegated to having the appellate court con *1184 sider the bare claim of excessiveness. Article 881.1 only precludes the defendant from presenting arguments to the court of appeal which were not presented to the trial court at a point in the proceedings when the trial court was in a position to correct the deficiency.
In both motions, Defendant argued that his sentence was excessive and that the trial court failed to sufficiently weigh the factors of La. C. Cr. P. art. 894.1. Defendant did not raise the issues of consecutive sentences or ex post facto in his motions for reconsideration of sentence. Defendant raised the issue of consecutive sentences during a resentencing hearing. 112The first time Defendant raised the ex post facto issue was on appeal. Therefore, Defendant’s sentence review is limited to the bare claim of excessiveness.
When reviewing an excessive sentence claim, the appellate court uses a two-prong test. First, the trial record must demonstrate that the trial court complied with La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating and mitigating circumstance, but the record must reflect that the trial court adequately considered the guidelines of La. C. Cr. P. art. 894.1. State v. Smith, 483 So.2d 688 (La.1988). The trial court should consider the defendant’s personal history and prior criminal record, the seriousness of the offense, the likelihood that the defendant will commit another crime and the defendant’s potential for rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981). The trial court is not required to assign any particular weight to any specific matters at sentencing. State v. Quiambao, 36,587 (La. App.2d Cir.12/11/02), 833 So.2d 1103, unit denied, 03-0477 (La.5/16/03), 843 So.2d 1130. When the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary, even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Landos, 419 So.2d 475 (La.1982).
The trial court adequately complied with La. C. Cr. P. art 894.1. During the original sentencing hearing on October 16, 2012, the trial court considered a letter written by K.W.; the presentence investigation report; Defendant’s criminal history, social history and work history; information | ^provided by Defendant- during the hearing[6] and letters written on Defendant’s behalf. The trial court also noted that he was the presiding judge during trial and had reviewed the La. C. Cr. P. art. 894.1 factors. The trial court considered Defendant’s criminal history with arrests for driving while intoxicated and criminal damage to property. The trial court considered Defendant’s educational and employment history, noting that Defendant did not finish high school, but received a GED, had welding certificates and took RV technical courses and that he had worked at the same company for the past eight years. The trial court noted that Defendant previously used alcohol, meth and marijuana, but had not used them in the past ten years, which the trial court considered to be a mitigating factor. The trial court also considered that Defendant is respected by his pastor and others.
The trial court also specified what it considered to be aggravating factors. The trial court noted that Defendant admitted to having anal sex with K.W., his stepdaughter who was a minor, and used her as an object for his own sexual gratification. The trial court called Defendant’s acts “perverse,” “depraved” and “volatile.” The trial court also noted that Defendant threatened harm upon K.W., stating that *1185 the victim will have “lifelong mental, emo.-tional, psychological scars” and that she cannot be compensated. The trial court determined that Defendant is not a candidate for probation because of an undue risk that he would commit another crime. | T 4After articulating the aggravating and mitigating circumstances considered, the trial court sentenced Defendant to 45 years at hard labor without the benefit of probation, parole or suspension of sentence for Count One, to 10 years at hard labor for Count Two and to 15 years at hard labor for Count Three, with all three sentences to run concurrently.
Defendant filed a motion to reconsider sentence, which was denied by the trial court. The trial court granted the state’s motion to reconsider sentence[7] and ordered a contradictory hearing,[8] which was held on | ^January 22, 2013. At this hear-mg, the state argued that the sentence should be reconsidered because the trial court did not consider all of the subsections of La. C. Cr. P. art. 894.1 and requested that the trial court order the sentences to run consecutively. The state argued that the trial court did not consider Defendant’s request for DNA testing on K.W. and the “emotional trauma” it caused K.W. The state also asserted that the trial court should consider information from KW.’s counselor as to her psychological and physical injuries, including her anal surgery. An evidentiary hearing was held on February 26, 2013. The state provided the trial court with a report from KW.’s counselor and requested that it consider the La. C. Cr. P. art. 894.1 factor of deliberate cruelty to the victim in Defendant’s request for a DNA test. The state also requested that the trial court order the *1186 sentences to run consecutively because the concurrent sentences, in effect, caused Defendant not to be punished for the two counts of aggravated incest based on the acts of anal sex that Defendant admitted to performing. Defendant responded with a request that the sentences run concurrently because the sexual acts were a pattern of conduct.
In a written ruling dated March 8, 2013, the trial court stated that it reviewed the following:
Motions and briefs of counsel for the State and the defense, the additional five-page letter from Rachael Peterson, M.S. and Adam Mathews, Ph.D., the Court ordered Pre-Sentence Investigation, the Court’s own personal sentencing notes, the previous sentencing via video tape recording and letters offered by or in support of Mr. Steve Hum-phries and the victim.
The trial court then granted the state’s motion and requested a date for resentenc-ing.
|1fiOn April 1, 2013, a hearing was held for the purpose of resentencing Defendant. The trial court adopted the information previously considered at the original sentencing as to Defendant’s history.
The trial court listed aggravating circumstances it considered. The .trial court stated that Defendant’s suggestion that he might be K.W.’s biological father was deliberately cruel toward the minor victim and caused an emotional outburst by the victim. The trial court considered that Defendant’s crimes were “particularly violent. Rough sex repeatedly.” The trial court reiterated that the victim was a minor who cannot give consent and noted additional information it received in a report from KW.’s counselor regarding “the totality of the possible lifelong effects that the child victim will likely suffer.”
The trial court stated that it reviewed La. C. Cr. P. arts. 883 and 883.1 and noted that imposing consecutive sentences for crimes arising out of a single course of conduct requires particular justification. The trial' court explained that it erred in the initial sentencing of Defendant. The trial court detailed the sexual acts committed by Defendant from the time K.W. was 5 to 15 and stated that the acts in Counts Two and Three
deserve and demand consecutive sentences as they do establish deliberate cruelty, exhibit a callus [sic] and perverse disregard for a child who he molested from age five to fifteen.... And they involve the physical taking of sexual intercourse anally from a child who refused such advances and who was requested to be left alone. Counts two and three involve threats of physical harm.
The trial court also noted Defendant’s lack of remorse during the proceedings. The trial court found that the acts of anal sex
117are clearly distinguishable and different and separate from the previous sexual acts by the defendant. They were done by force and by theft — by a threat of harm, not theft, but a threat of harm and injury. They are not just one continuous and ongoing crime.
For these detailed reasons, the trial court resentenced Defendant to 45 years at hard labor without the benefit of probation, parole or suspension of sentence for Count One, to 16 years at hard labor for Count Two and to 16 years at hard labor for Count Three, ordering Counts Two and Three to run concurrently with each other and consecutively with Count One.
As to the first prong of the excessive-sentence test, this court finds that the trial court adequately complied with La. C. Cr. P. art. 894.1 when sentencing Defendant. At both sentencing hearings, . the trial court noted in great detail the aggravating *1187 and mitigating circumstances it considered.
Second, the appellate court must determine if the sentence is constitutionally excessive. A sentence is excessive and violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Id. A trial court has wide discretion in imposing a sentence within the statutory limits, and a sentence should not be set aside absent a showing of abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430.
| ^Defendant argues that the 45-year sentence imposed by the trial court as to Count One is excessive because the trial court sentenced Defendant using an amended version of La. R.S. 14:78.1 that was not in effect for part of the time range alleged in Count One. Although this claim was not raised in a motion to reconsider sentence and was raised for the first time on appeal, it is a necessary consideration in the excessive-sentence analysis to determine if the trial court imposed a sentence within the statutory limits.
Count One encompasses the years before K.W. turned 13 years of age, i.e., January 1, 2000, to December 19, 2008. Prior to August 15, 2006, La. R.S. 14:78.1(D) set forth the following penalty for all convictions of aggravated incest:
A person convicted of aggravated incest shall be fined an amount not to exceed fifty thousand dollars, or imprisoned, with or without hard labor, for a term not less than five years nor more, than twenty years, or both.
In 2006, La. R.S. 14:78.1(D) was amended to add an enhanced penalty:
(2) Whoever commits the crime of aggravated incest on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than life imprisonment. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
La. R.S. 14:78.1(D)(2) was amended in 2008 to state:
(2) Whoever commits the crime of aggravated incest on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
119The trial court sentenced Defendant as to Count One under the 2008 version of La. R.S. 14:78.1(D)(2), explaining to Defendant that the sentence range was 25 to 99 years.
Defendant contends that, although the jury convicted him of committing aggravated incest between the dates of January 1, 2000, and December 19, 2008, it is unclear whether the jury found that the state proved beyond a reasonable doubt that aggravated incest occurred after the effective date of the 2006 amendment of La. R.S. 14:78.1, i.e., August 15, 2006. Defendant argues that, because of this uncertainty, the trial court should have, sentenced Defendant pursuant to the 1993 *1188 version of La. R.S. 14:78.1, which was in effect prior to the 2006 amendment.
This court addressed a similar issue in State v. Simpkins, 44,197 (La.App.2d Cir.5/13/09), 12 So.3d 1021. The defendant in Simpkins was charged with, among other crimes, molestation of a juvenile. The evidence presented at trial demonstrated that the defendant first molested the victim in August 2005, that the defendant had no contact with the victim from 2005 to 2006, that the victim turned 13 in January 2007 and that the defendant raped the victim six or seven times before February 2007. The jury convicted the defendant of molestation of a juvenile, and the trial court sentenced him to ten years at hard labor. The molestation of a juvenile statute, La. R.S. 14:82.2, was amended in 2006 in the same act as the aggravated incest statute, La. R.S. 14:78.1, to add an enhanced penalty for when the victim is under the age of 13 and the offender is over the age of 17. On appeal, this court determined that the trial court should have |2nsentenced the defendant pursuant to the enhanced penalty of the 2006 version of La. R.S. 14:82.2. This court explained that the defendant was exposed to the enhanced penalty from the effective date of August 15, 2006, until January 13, 2007, when the victim turned 13 years old. After examining the time line of events presented at trial, this court determined that “it defies all logic that this repulsive pattern of lewd and lascivious conduct towards [the victim] would occur before and after this five-month window, but abruptly cease, cold turkey, during this window” between the effective date and the victim’s 13th birthday. This court vacated the sentence as illegally lenient and remanded to the trial court for resentencing pursuant to the 2006 enhanced penalty. On remand, the trial court sentenced the defendant to life imprisonment at hard labor. The defendant filed an application for post-conviction relief arguing that the sentence was illegal because the court of appeal made a factual assumption that molestation must have occurred during the five-month period. The trial court denied the application, and the defendant filed an application for a writ of certiorari. In State ex rel. Simpkins v. State, 12-1599 (La. 12/14/12), 102 So.3d 776, the Louisiana Supreme Court granted the writ in part and held that the sentence was illegal. The court reasoned that no evidence was introduced at trial that any act of molestation occurred during the five-month window between the effective date of August 15, 2006, and the victim’s 13th birthday on January 13, 2007, and that the appellate court assumed that acts must have occurred during this window. The court vacated the life sentence and reinstated the ten-year sentence.
|21The case sub judice is distinguishable from Simpkins, supra. In Simpkins, the evidence presented at trial demonstrated that the molestation of the victim by the defendant ceased for approximately a year, including the time between the effective date of the 2006 amendment to La. R.S. 14:82.2 and the victim’s 13th birthday. In the instant case, the victim testified that the acts of aggravated incest by Defendant never ceased during a ten-year period beginning in 2001 when she was 5 years old:
• K.W. was born on December 19, 1995.
• K.W.’s mother, M.H., married Defendant when K.W. was 5, almost 6, which would have been during the fall of 2001.
• When K.W. was 5 and 6 years of age (December 19, 2000 — December 19, 2002), Defendant “would make [K.W.] rub his penis with [her] hand” two to three times a week.
• When K.W. was 8 or 9 years of age (December 19, 2003 — December 19, 2005), Defendant “stuck a spark plug up her butt.”
*1189 • When K.W. was 8 to 10 years of age (December 19, 2008 — December 19, 2006), Defendant “made [her] get naked and bend over so that he could see [her] vaginal area and he would masturbate” three or four times a week.
• When K.W. was approximately 10 years old (December 19, 2005 — December 19, 2006), Defendant began making her watch pornographic movies.
• On August 15, 2006, La. R.S. 14:78.1(D)(2) became effective, which added an enhanced penalty to the aggravated incest statute for when the victim is under the age of 13 and the offender is over the age of 17.
• When K.W. was 10 to 12 years of age (December 19, 2005-December 19, 2008), Defendant touched her and fondled her.
• When K.W. was 12 (December 19, 2007 — December 19, 2008), she told her mother that Defendant had been touching her but then recanted after Defendant threatened her.
|¾>* On August 15, 2008, La. R.S. 14:78.1(D)(2) was amended to change the maximum penalty from life in prison to 99 years.
• K.W. turned 13 on December 19, 2008.
• When K.W. was 13 to 15 years of age (December 19, 2008 — December 19, 2011), Defendant continued to touch and fondle her.
• On February 26, 2011, Defendant first forced K.W. to have anal sex with him. Defendant forced K.W. to have anal sex with him approximately 20 times, with the final time being on May 29, 2011.
As demonstrated in this time line, acts of incest occurred multiple times a week beginning when K.W. was 5 years old and escalated to forced anal sex when K.W. turned 15 years old. KW.’s testimony detailed a continuous pattern of conduct that never ceased. Considerable evidence was presented at trial of acts of incest performed between the effective date of the 2006 amendment and KW.’s 13th birthday. During this time period, K.W. testified that Defendant made her pose naked while he masturbated, made her watch pornography and touched and- fondled her. K.W. also testified that, when she was 12 years old, she told her mother that Defendant had been touching her inappropriately, but that she recanted her story after Defendant threatened her. Unlike in Simpkins, there is no need for this court in this case to assume facts — the evidence presented at trial clearly supports that acts of aggravated incest occurred between the effective date of the 2006 amendment and KW.’s 13th birthday.
This case is further distinguishable from. Simpkins, supra, because, in Simpkins, the defendant’s exposure to the enhanced penalty was approximately five months. In the instant case, Defendant was exposed to the enhanced penalty from the effective date of August 15, 2006, until | ^December 19, 2008, when K.W. turned 13 years old — over two years and four months of exposure.
Therefore, this court finds that the trial court did not err when sentencing Defendant pursuant to the enhanced penalty of La. R.S. 14:78.1(D)(2). Considerable evidence was presented at trial that Defendant committed aggravated incest for over two years between the effective date of the enhanced provision and the victim’s 13th birthday. The sentence is within the statutory limits.
Based on the law and the facts of the case, we conclude that the trial court did not abuse its wide discretion in sentencing Defendant to a total sentence of 61 years at hard labor. The 45-yeár sen *1190 tence as to Count One is toward the lower end of the sentencing range of 25 to 99 years in La. R.S. 14:78.1(D)(2).[9] Considering the weekly acts of aggravated incest that began when the victim was five years old and continued, as encompassed in Count One, until she turned 13, a 45-year sentence is not excessive. Such a sentence is not grossly out of proportion to the severity of the crime and does not shock the sense of justice. Similarly, the 16-year sentences for Counts Two and Three, which encompass the acts of forced anal sex that Defendant admitted to, are not excessive and are within La. R.S. 14:78.1(D)(l)’s sentencing range of 5 to 20 years with or without hard labor with a fine not to exceed $50,000. The concurrent 16-year sentences are not l^out of proportion to the severity of the crime and do not shock the sense of justice.
Furthermore, the total sentence of 61 years at hard labor is not excessive. When a defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. This court, in State v. Boudreaux, 41,660 (La.App.2d Cir.12/13/06), 945 So.2d 898, writ denied, 07-0058 (La.11/2/07), 966 So.2d 591, sets forth the law as to consecutive and concurrent sentences and states:
Concurrent sentences arising out of a single cause of conduct are not mandatory, and it is within a trial court’s discretion to order sentences to run consecutively rather than concurrently.
A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms.
Among the factors to be considered are the defendant’s criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, the potential for defendant’s rehabilitation, and whether defendant has received a benefit from a plea bargain.
... [T]he failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences.
(Internal citations omitted.)
During the resentencing hearing, the trial court specifically noted that particular justification was required for imposing consecutive sentences forj^crimes arising out of a single course of conduct. As discussed, supra, the trial court thoroughly detailed the aggravating and mitigating factors it considered when deciding on Defendant’s sentence. The trial court emphasized how the sexual acts performed by Defendant escalated after K.W. turned 15 to include forced anal sex. It determined that the acts performed in Count One and *1191 the acts performed in Counts Two and Three were distinguishable and not an ongoing crime. Based upon this reasoning, the trial court ordered that Counts Two and Three run concurrently with each other and consecutively with Count One. The trial court properly provided particular justification and clearly stated the factors it considered in imposing this sentence. We find, therefore, that the trial court did not err in ordering consecutive sentences and that the total sentence of 61 years at hard labor is not excessive.
As to the second prong of the excessive-sentence test, this court finds that the sentence is not constitutionally excessive. Therefore, this assignment of error lacks merit.

CONCLUSION

For the foregoing reasons, Defendant’s conviction and sentence are affirmed.
AFFIRMED.

. To protect the privacy of the victim and her mother, the victim will be referred to by her initials, K.W., and her mother by her initials, M.H., pursuant to La. R.S. 46:1844(W).

. Defendant's birthday is February 26, 1976.

. Prior to trial, a free and voluntary hearing was held, and the trial court determined that Defendant’s statements to law enforcement were made freely and voluntarily, without any inducements, threats or coercion.

. These two admissions form the basis for Counts Two and Three.

. Prior to the 2004 amendment of La. R.S. 14:78.1, "aggravated sexual battery” was listed as a prohibited act under Section B. The 2004 amendment changed this term to "second degree sexual battery.” 2004 La. Sess. Law Serv. 676 (West).

. During this hearing, Defendant told the trial court that he believed there was a possibility that K.W. is his biological daughter and requested a DNA test. The trial court explained to Defendant that it could not order a DNA test.

. La. C. Cr. P. art. 881.1(B) states, in pertinent part, that: "The motion ... shall set forth the specific grounds on which the motion is based." Specifically, the state argued that the trial court did not consider:
A. The offender’s conduct during the commission of the offense manifested deliberate cruelty to the victim.
B. The offender knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to extreme youth.
C. The offender used his position or status to facilitate the commission of the offense, as the defendant was a step-parent.
D. The offense resulted in a significant permanent injury to the victim, psychological and physical.
E. The offense involved multiple incidents over years for which the defendant received no actual punishment. The State shows that the Court ran a 10 year and 15 year sentence on counts 2 and 3, concurrent with each other and concurrent with count 1 which involved separate conduct over many years prior to the child reaching the age of 13. In essence, this Court imposed no sentences whatsoever on the defendant that he would actually serve in relation to counts 2 and 3.
F.Any other relevant aggravating circumstances which includes the defendant’s outrageous behavior on date of sentencing when he tried to convince this Court that he should have DNA testing to prove he was the biological father of the child. The defendant’s outrageous conduct caused additional harm to the minor child as the Court witnessed in open court. The minor victim was aghast at the new claims by the defendant.

. The trial court had jurisdiction to reconsider Defendant’s sentence pursuant to La. C. Cr. P. art. 916, which states, in part, that:
The jurisdiction of the trial court is divested and that of the appellate court attaches upon the entering of the order of appeal. Thereafter, the trial court has no jurisdiction to take any action except as otherwise provided by law and to:
[[Image here]]
(3) Correct an illegal sentence or take other appropriate action pursuant to a properly made or filed motion to reconsider sentence.
La. C. Cr. P. art. 881.1(D) states, in part, that "The trial court may deny a motion to reconsider sentence without a hearing, but may not grant a motion to reconsider without a contradictory hearing.”

. As discussed, supra, La. R.S. 14:78.1(D)(2) was added in 2006 to include an enhanced penalty with a sentencing range of 25 years to life imprisonment at hard labor. The statute was amended in 2008 to change the sentencing range to 25 to 99 years at hard labor. The trial court in this case sentenced Defendant pursuant to the 2008 statute, stating at the sentencing hearing that the sentencing range was 25 to 99 years. Although it is questionable whether the 2006 or 2008 statute should have been applied, this consideration is irrelevant because Defendant was not sentenced to the statutory maximum sentence.